[No. A093521. First Dist., Div. Three. Apr. 16, 2002.]

ESTER B. JERSEY, Plaintiff and Appellant, v.
JOHN MUIR MEDICAL CENTER et al., Defendants and Respondents.

## COUNSEL

The Johnson Law Firm and Ronald Roy Johnson for Plaintiff and Appellant.

Musick, Peeler & Garrett, David Mitchell Lester and Elaine Vukadinovich for Defendants and Respondents.

## OPINION

**POLLAK, J.**—The principal question presented by this appeal is whether a hospital that terminates an at-will employee for bringing a personal injury action against a former patient who had assaulted the employee during the course of her employment violates a fundamental public policy that supports a so-called *Tameny* claim.[1] The trial court concluded that it did not and granted summary judgment to the defendant hospital. We agree with this conclusion and affirm. However, we reverse an award of attorney fees made to the defendant under a related Fair Employment and Housing Act cause of action for sex discrimination.

### STATEMENT OF FACTS

Plaintiff was employed by the defendant medical center in various nursing assistant and technician positions for approximately seven years. The employee handbook that she received, and other documents that she signed in connection with her employment, stated explicitly that her employment was

---

[1] *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314] (*Tameny*).

at will, but said nothing about suing or refraining from suing patients of the hospital. In August of 1997, plaintiff was assaulted by a patient in the rehabilitation unit who was suffering from head trauma. Plaintiff was injured and went on workers' compensation leave. Slightly less than one year later, after the patient had been discharged from the hospital, plaintiff filed a personal injury action against him, alleging battery, assault and sexual battery. When her superiors learned of the suit, they wrote plaintiff demanding that she dismiss the action or be considered to have resigned her position.[2] When plaintiff failed to dismiss the suit, she was deemed to have resigned.

Plaintiff's present complaint alleges five causes of action against the defendants, John Muir Medical Center and John Muir/Mt. Diablo Health System (defendant) entitled "Wrongful Termination in Violation of Public Policy," "Sex Discrimination," "Implied Contract," "Intentional Infliction of Emotional Distress" and "Negligent Infliction of Emotional Distress." Following discovery, defendant filed a motion for summary judgment, which the trial judge ultimately granted. With respect to the cause of action for wrongful termination in violation of public policy, the court's minute order explained in part: "It was not a violation of public policy for defendants to terminate plaintiffs [sic] for refusing to dismiss her lawsuit against a former patient. The right of access to the courts is a right owed to the public by the government. In general, there is no public policy that bars private party employers from reacting adversely to lawsuits filed by their employees." At the same time, the court denied a motion, which the plaintiff had filed with her opposition to the summary judgment motion, for leave to file an amended complaint or to take additional discovery. Subsequently, the court granted the hospital's motion for an award of attorney fees against the plaintiff on the sex discrimination claim. Plaintiff's timely appeal challenges the summary adjudication of each cause of action, the denial of the motion for leave to amend, and the award of attorney fees.

---

[2]The letter, almost in full, read as follows: "It has recently been brought to our attention that you have elected to file a lawsuit against one of our patients whom you allege assaulted you. In investigating this matter I find that the patient in question was a head trauma patient on our Rehab Unit. As you are well aware, it is not uncommon for head trauma patients to exhibit erratic and sometimes violent behavior due to their medical condition, and as such they cannot be held responsible for their actions. [¶] The mission of this organization states that we are dedicated to improving the health of the communities we serve with quality and compassion. Suing a patient who cannot be held accountable for his actions because of a medical or psychological condition fits neither our mission nor its values. We expect you as a provider of patient care to assist our patients through their acute stages of illness and support them as they move through the health care continuum. Suing patients for non-intentional behavior does not meet these goals. [¶] We cannot allow you to remain in our employ at the same time you pursue this lawsuit against our patient, due to the conflict of interest. If we do not receive written confirmation from you within one week of the date of this letter that you have dropped your lawsuit against the patient, we will presume you have resigned your position."

## DISCUSSION

1. *Wrongful Termination in Violation of Public Policy*

Plaintiff's cause of action for wrongful termination in violation of public policy arises out of well-settled principles of California law, but in a context for which prior decisions provide no clear direction. ■ To the broad principle that an employer may discharge an at-will employee such as plaintiff for any reason, or for no reason at all, it is now a well-established exception that an employer may not do so when the discharge violates "fundamental principles of public policy." (*Tameny, supra*, 27 Cal.3d at p. 170; *Stevenson v. Superior Court* (1997) 16 Cal.4th 880 [66 Cal.Rptr.2d 888, 941 P.2d 1157] (*Stevenson*); *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 665-671 [254 Cal.Rptr. 211, 765 P.2d 373] (*Foley*).) A termination under such circumstances is tortious. (*Tameny, supra*, at p. 177.) The exception to the at-will employment principle exists under the law of many other jurisdictions (see, e.g., *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1090 [4 Cal.Rptr.2d 874, 824 P.2d 680] (*Gantt*); Note, *Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception* (1983) 96 Harv. L.Rev. 1931); and in California traces back to the decision in *Petermann v. International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25], which preceded the California Supreme Court's decision in *Tameny* by some 20 years.

"Yet," the Supreme Court later observed in *Gantt*, "despite its broad acceptance, the principle underlying the public policy exception is more easily stated than applied. The difficulty, of course, lies in determining where and how to draw the line between claims that genuinely involve matters of public policy, and those that concern merely ordinary disputes between employer and employee. This determination depends in large part on whether the public policy alleged is sufficiently clear to provide the basis for such a potent remedy. In *Foley v. Interactive Data Corp., supra*, 47 Cal.3d 654, we endeavored to provide some guidelines by noting that the policy in question must involve a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer; in addition, the policy must be 'fundamental,' 'substantial' and 'well established' at the time of the discharge. (*Id.* at pp. 669-670.)" (*Gantt, supra*, 1 Cal.4th at p. 1090.)

In *Gantt*, the Supreme Court also observed, "as courts and commentators alike have noted, the cases in which violations of public policy are found generally fall into four categories: (1) refusing to violate a statute [citations]; (2) performing a statutory obligation [citation]; (3) exercising a statutory

right or privilege [citation]; and (4) reporting an alleged violation of a statute of public importance [citations]." (*Gantt, supra,* 1 Cal.4th at pp. 1090-1091, fn. omitted.) ▮ Seizing upon the third category, plaintiff argues that since she was terminated for exercising the right to bring a suit, her termination was necessarily wrongful. The syllogism, however, is not quite so simple.

While discharging an employee for exercising a right or privilege may in some instances contravene a fundamental public policy, supporting a wrongful termination claim, neither *Gantt* nor any other case has held that every such discharge necessarily satisfies the criteria for a wrongful termination action. Discharging an employee for exercising a right is tortious only if the criteria enumerated in *Gantt* and subsequent decisions are met. (See, e.g., *Stevenson, supra,* 16 Cal.4th at pp. 889-890.) The public policy that is violated must be one that is delineated by constitutional, statutory, or regulatory provisions. (*Ibid.*; *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 79-80 [78 Cal.Rptr.2d 16, 960 P.2d 1046] (*Green*).) It must be a policy that inures to the benefit of the public, and it must be well established, " 'fundamental' and 'substantial.' " (*Stevenson, supra,* at p. 890; cf. *Green, supra,* 19 Cal.4th at pp. 89-90.)

Access to the courts is indeed a right guaranteed to all persons by the federal and state Constitutions. It is regarded as arising from the First Amendment right to petition the government for redress of grievances (*Zhao v. Wong* (1996) 48 Cal.App.4th 1114, 1122 [55 Cal.Rptr.2d 909]; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 647-648 [49 Cal.Rptr.2d 620]), a right also protected by article I, section 3 of the California Constitution. (See also Cal. Const., art. I, § 16 [inviolate right to jury trial].) Numerous cases, in a variety of contexts, may be cited for the obvious importance of this right to our system of government and, indeed, to the very fabric of our society. (E.g., *Bill Johnson's Restaurants, Inc. v. NLRB* (1983) 461 U.S. 731, 741 [103 S.Ct. 2161, 2168-2169, 76 L.Ed.2d 277]; *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 334-335, 339 [84 Cal.Rptr.2d 425, 975 P.2d 622]; *Payne v. Superior Court* (1976) 17 Cal.3d 908 [132 Cal.Rptr. 405, 553 P.2d 565].) A discharge for the exercise of a constitutionally conferred right, no less than the exercise of a statutory right, may support a wrongful termination action in violation of public policy. (See *Green, supra,* 19 Cal.4th at p. 76.) And plaintiff also grounds her claim on the theory that her discharge was in retaliation for exercising a right created by Civil Code section 1708.5, the section which defines a sexual battery and explicitly creates one of the causes of action on which plaintiff based her complaint against the patient who assaulted her.

Nonetheless, in determining whether discharging an employee for exercising a right violates a fundamental public policy, the focus is not simply on

the importance of the right that was exercised. The issue is whether permitting an employer to discharge an employee for exercising that right would undermine a " 'clearly mandated public policy' " embodied in the provision from which that right emanates. (*Green, supra,* 19 Cal.4th at p. 90.) It must be clear from the provision itself or from some other legislative or regulatory enactment that employers are not free to disregard or limit that right. "Although one should not assume that the employer's *precise act* (e.g., discharging an employee for refusing to commit a crime) must be specifically prohibited for the public policy exception to apply, a constitutional or statutory provision must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law." (*Sequoia Ins. Co. v. Superior Court* (1993) 13 Cal.App.4th 1472, 1480 [16 Cal.Rptr.2d 888], fn. omitted.) Thus, in *Sullivan v. Delta Air Lines, Inc.* (1997) 58 Cal.App.4th 938, 947 [68 Cal.Rptr.2d 584], the court concluded "that the policy underlying the ADRA's [(Alcohol and Drug Rehabilitation Act)] prohibition of employment discrimination based on voluntary participation in a rehabilitation program does not support a common law tortious discharge claim." The court recognized that "there are statutes encouraging participation in rehabilitation programs for a variety of categories of individuals," but pointed out that "none protect employment rights." (*Id.* at p. 946.) Hence, the discharge of an employee undergoing rehabilitation was not wrongful because the ADRA "does not clearly prohibit any specific employer conduct." (*Id.* at p. 947.)

In *Gantt,* the single case cited to illustrate those cases in which discharge for exercise of a statutory right has been held to be tortious was *Wetherton v. Growers Farm Labor Assn.* (1969) 275 Cal.App.2d 168 [79 Cal.Rptr. 543]. (*Gantt, supra,* 1 Cal.4th at p. 1090.) In that case, the employee was discharged because he was engaging in union activities. Not only does the California Labor Code explicitly provide an employee the right to engage in such conduct, but it makes clear that public policy precludes employers from interfering with that right. Since 1937, section 923 of the Labor Code has declared the public policy of this state to recognize "that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that *he shall be free from the interference, restraint, or coercion of employers of labor . . . in self-organization or in other concerted activities for the purpose of collective bargaining . . . .*" (Italics added.) Moreover, Labor Code section 922 makes it a misdemeanor for any person to coerce another not to join a labor organization "as a condition of securing employment or continuing in the employment of any such person." Thus, in threatening to fire employees if they joined a union, there was "no question that there was a violation of the public policy

established by section 923." (*Wetherton v. Growers Farm Labor Assn., supra,* 275 Cal.App.2d at p. 175, disapproved on other grounds in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510 [28 Cal.Rptr.2d 475, 869 P.2d 454].) Indeed, many cases have recognized that a discharge because of an employee's exercise of the right to engage in union activities contravenes this explicit and important public policy and therefore is wrongful. (*Glenn v. Clearman's Golden Cock Inn* (1961) 192 Cal.App.2d 793, 796 [13 Cal.Rptr. 769] ["By the enactment of section 923 it is apparent that the Legislature has modified the normal right of discharge by employers to the extent that no employer may discharge an employee solely because of his membership or activity in a labor union."]; *Montalvo v. Zamora* (1970) 7 Cal.App.3d 69 [86 Cal.Rptr. 401] [agreement by an employee to forgo collective bargaining would be unenforceable because of the strong public policy underlying state and federal labor laws]; cf. Gov. Code, § 3506 [public employees]; *Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 555-557 [28 Cal.Rptr.2d 617, 869 P.2d 1142] [public agency may not discharge an attorney solely or chiefly because he or she has engaged in protected activity under the Meyers-Milias-Brown Act, Gov. Code, § 3500 et seq.].)

There are, however, other rights that an employer can insist be surrendered as a condition of employment. For example, newspaper reporters like everyone else enjoy the constitutional right to free speech, but a newspaper may terminate a reporter who exercises that right in a manner that contravenes the editorial policy of the paper. (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1391 [88 Cal.Rptr.2d 802].) Despite the Fifth Amendment right to silence, an employer—even a government employer—may discharge an employee who refuses to answer questions pertinent to a security investigation. (*TRW, Inc. v. Superior Court* (1994) 25 Cal.App.4th 1834, 1843-1844, 1853 [31 Cal.Rptr.2d 460].) In these situations, there are other legitimate interests of the employer that are served by permitting the employer to prohibit exercise of the particular right, the limitation imposed by the employer does not eviscerate the right itself, and no legislative imprimatur for prohibiting exercise of the right can be cited.

Coming closer to the mark in this case, there are other rights associated with employment with which an employer may not interfere. Labor Code section 98.6 explicitly provides that "[n]o person shall discharge or in any manner discriminate against any employee . . . because the employee . . . has filed a bona fide complaint or claim" relating to any rights under the jurisdiction of the Labor Commissioner. Numerous other provisions of the Labor Code protect an employee's right to prompt and unconditional payment of wages. (E.g., Lab. Code, §§ 201, 201.5, 201.7, 202, 204, 206, 206.5,

209, 212, 216, 218, 222-224.) Labor Code section 219 makes explicit that none of these protective provisions may be waived by agreement, and a termination for the exercise of these rights will support a wrongful termination action. (*Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563 [74 Cal.Rptr.2d 29] [Labor Code provisions make prompt payment of wages "a fundamental public policy of this state" supporting *Tameny* cause of action where employee allegedly discharged for complaining about improper setoff against wages].) Similarly, Labor Code section 132a makes it the "declared policy of this state" that there be no discrimination against workers who are injured in the course of their employment, and explicitly provides that "[a]ny employer who discharges, or threatens to discharge" an employee for filing an application for or receiving workers' compensation benefits commits a misdemeanor and is subject to severe penalties. A discharge in violation of section 132a likewise may support a cause of action for wrongful termination. (*City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1158-1161 [77 Cal.Rptr.2d 445, 959 P.2d 752].) However, an employer may with impunity discharge an employee for filing an action over matters that do not enjoy any such clear statutory protection. There are appropriate reasons for which an employer may wish to prevent its employees from suing the employer itself, such as avoiding dissention in the workplace, and no statute has expressed the policy judgment that an employer's interests in this regard should be subordinated to the employee's general right of access to the courts. (*Becket v. Welton Becket & Associates* (1974) 39 Cal.App.3d 815, 821 [114 Cal.Rptr. 531] ["plaintiff can point to no articulated public policy which is violated by" terminating a senior employee who, in his capacity as co-executor of his father's estate holding the corporation's stock, filed suit against the president and chief executive officer]; *Whitman v. Schlumberger Ltd.* (N.D.Cal. 1992) 793 F.Supp. 228, 232 [no wrongful discharge for terminating sales executive who had filed suit against employer over reclassification of an account: "Plaintiff has cited numerous constitutional and statutory provisions, but none serve to clearly identify and support a public policy favoring free access to the courts without fear of reaction by the defendant [employer]."])

Similarly, an employer may insist that its employees forgo their right of access to the courts by submitting all employment-related disputes to grievance procedures or nonjudicial arbitration, so long as the agreement to do so is not unconscionable. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669]; *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105 [88 Cal.Rptr.2d 664] [discharge for refusing to waive constitutional right to a jury trial and a judicial forum did not violate substantial public policy and was not wrongful].)

None of the broad constitutional and statutory provisions plaintiff relies upon reflect a legislative determination that it is against public policy for an employer to insist that its employees not sue its customers, clients or patients. Defendant considered that permitting its staff to file claims against a patient whose conduct may have been affected by the very injuries for which the patient was being treated was contrary to the mission of the hospital and should not be permitted. While plaintiff correctly observes that there was no showing that the patient who attacked her was not in control of his faculties, the existence of a factual dispute over this issue did not require denial of the summary judgment motion. The question is not whether the hospital's decision to terminate plaintiff was justified, but whether the termination violated a public policy that has been clearly articulated by a legislative or regulatory body. Even if defendant's decision was misguided or based on an erroneous factual premise, that would not eliminate the need for a clear expression of legislative policy disfavoring a discharge for this reason to support a wrongful discharge claim. While there are policy arguments to be made as to why an employer should be discouraged from preventing its employees from seeking recovery against third parties who injure them during the course of their employment, there are defensible reasons for which an employer may consider such suits contrary to the best interests of the business. The reasons advanced by the defendant hospital in this case are illustrative. (See fn. 2, *ante.*)

Courts in most other states have concluded, as did the trial court here, that constitutional "open courts" provisions limit only the actions of government and the courts themselves, but do not limit the actions of private individuals, including employers. (*Deiters v. Home Depot U.S.A., Inc.* (M.D.Tenn. 1993) 842 F.Supp. 1023, 1027, 1029 [state constitutional provision guaranteeing access to courts limits only governmental actions and "does not clearly and unambiguously create a public policy which would prevent the discharge of at-will employees who sue their employers"; "[o]ther states addressing similar public policy claims have consistently held that at-will employees who are terminated for suing their employer may not claim that such termination violated public policy"]; see *Rendish v. City of Tacoma* (9th Cir. 1997) 123 F.3d 1216 [discharge of public employee for filing suit against employer does not violate constitutional right of access to the courts unless the suit involves a matter of public concern].) Thus, a plastic surgeon who terminated a nurse for filing a products liability action against one of the doctor's suppliers was held not to have violated the public policy reflected in the "Open Courts" provision of the Ohio Constitution. "[N]o jurisdiction has applied substantially similar Open Courts constitutional provisions to this cause of action [for wrongful termination] except where the employee's claim against the employer was statutorily protected . . . ." (*Takach v. Am.*

*Med. Technology, Inc.* (1998) 128 OhioApp.3d 457, 462-465 [715 N.E. 2d 577, 580-582], app. allowed 82 Ohio St.3d 1482 [696 N.E.2d 1088], app. dism. 85 Ohio St.3d 1213 [709 N.E.2d 169]; see also, e.g., *DeMarco v. Publix Super Markets, Inc.* (Fla.Dist.Ct.App. 1978) 360 So.2d 134, affd. (Fla. 1980) 384 So.2d 1253; *Alexander v. Kay Finlay Jewelers, Inc.* (1986) 208 N.J. Super. 503 [506 A.2d 379], cert. den. 104 N.J. 466 [517 A.2d 449].)

The Supreme Court of Oklahoma appears to be the only court that has concluded that "a discharge in retaliation for the worker's refusal to abandon his/her . . . lawsuit against a third party to redress an on-the-job injury impermissibly interferes with the legally protected recovery regime for those who suffer work-connected harm . . . [and] is hence in breach of the law's declared public policy." (*Groce v. Foster* (1994) 1994 Okla. 88 [880 P.2d 902, 905].) In that case, the Oklahoma Supreme Court "divined" this public policy not from the constitutional right of access to the courts, but from the sections of the state's Workers' Compensation Act "considered *in combination rather than singly*." (*Id.* at p. 907, italics in original.) This decision evoked a strong dissent (*id.* at pp. 909-912) and is inconsistent with the decisions of courts in other states that have found in their statutes no public policy prohibiting employers from restricting the right of their employees to bring suits against third parties. (*Takach v. Am. Med. Technology, Inc., supra,* 715 N.E.2d 577; *Wagner v. General Elec. Co.* (E.D.Pa. 1991) 760 F.Supp. 1146; *McCloskey v. Eagleton* (Mo.Ct.App. 1990) 789 S.W.2d 518; cf. *Mitchell v. Deal* (1993) 241 Ill.App.3d 331 [182 Ill.Dec. 75, 609 N.E.2d 378], app. den. (1993) 151 Ill.2d 566 [186 Ill.Dec. 384, 616 N.E. 2d 337] [no violation of public policy to terminate employee not covered by workers' compensation for suing employer over work-related injury].)[3]

The point here is not to resolve differences over the most advisable public policy, which these cases from other jurisdictions suggest, but simply to note that this is a question that the California Legislature has not addressed. Plaintiff has cited no provision in the California Workers' Compensation Act (Lab. Code, § 3200 et seq.), or elsewhere, which suggests any restrictions on an employer's right to preclude its employees from bringing third party actions for work-related injuries. To the contrary, Labor Code section 3852

---

[3]The recent Ninth Circuit Court of Appeals decision, *Little v. Windermere Relocation, Inc.* (9th Cir. 2001) 265 F.3d 903, involved a very different situation. There the claim that the plaintiff was discharged in violation of the public policy of the State of Washington was predicated on the plaintiff having been terminated for having made a complaint of sexual harassment *by her employer*. Although the individual who had engaged in an extreme form of sexual misbehavior towards the plaintiff was an executive of a potential client of her employer, plaintiff claimed that her employer had ratified or acquiesced in this conduct (*id.* at pp. 912-913), so that the harassment claim that allegedly triggered the discharge was against her employer itself.

provides that the claim of an injured worker "does not affect his or her claim or right of action for all damages" against any person other than the employer, and Labor Code section 3856 regulates the priority of payments received from the prosecution of such third party claims. While the statute expressly deals with some aspects of third party claims, these provisions do not imply, much less articulate, a policy prohibiting employers from insisting that their employees refrain from bringing such suits. The silence in this regard stands in stark contrast to the statutory provisions cited above which clearly articulate a public policy against employer interference with certain rights. The absence of such a restriction also contrasts with the explicit prohibition in Labor Code section 3751 against an employer receiving any contribution from an employee to cover the cost of compensation benefits, and with Unemployment Insurance Code section 1237, which provides that "[n]o business entity shall discharge or otherwise discriminate against any person" because that person requests information from the Department of Employment Development concerning his or her rights under that code or the Labor Code.

Permitting an employer to restrict its employees' right to sue thus is not without some justification, it does not undermine the core values inherent in our judicial system, and no legislative or rulemaking body has made clear that such a restriction is not permissible. Therefore, we must adhere to the teaching of *Gantt* that "courts should venture into this area [of defining public policy], if at all, with great care and due deference to the judgment of the legislative branch, 'lest they mistake their own predilections for public policy which deserves recognition at law.' " (*Gantt, supra,* 1 Cal.4th at p. 1095.) ■ "[C]ourts in *wrongful discharge actions* may not declare public policy without a basis in either constitutional or statutory provisions. A public policy exception carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions" is necessary. (*Ibid.*)

■ As a means of confirming the conclusion that plaintiff's discharge does not violate a fundamental public policy, it is helpful to consider the test derived from footnote 12 in *Foley* and applied in many subsequent decisions: whether an explicit agreement between plaintiff and defendant in which plaintiff agreed that she would not sue patients for their behavior while in the hospital would be unenforceable as against public policy. (See *Foley, supra,* 47 Cal.3d at pp. 670-671, fn. 12; *Lagatree v. Luce, Forward, Hamilton & Scripps, supra,* 74 Cal.App.4th at pp. 1112-1116.) Such an agreement waiving plaintiff's right to bring suit against third parties presumably would be enforceable because it would not violate either of the two criteria of "unwaivability" articulated by the California Supreme Court in *Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at page 100.

Such a hypothetical agreement would not exempt the hospital from the consequences of its own misconduct, and plaintiff would be surrendering only a personal right to recover her own damages, with little if any impact on other members of the public. (Cf. *Hunter v. Up-right, Inc.* (1993) 6 Cal.4th 1174, 1186 [26 Cal.Rptr.2d 8, 864 P.2d 88].) Because plaintiff could expressly waive the right to bring such an action, it follows that there is no strong public policy that prevented her employer from discharging her for commencing litigation, despite the absence of an express agreement not to do so. (*Lagatree v. Luce, Forward, Hamilton & Scripps, supra,* 74 Cal.App.4th at pp. 1116-1117.)

Plaintiff argues that defendant should not be permitted to terminate her for insisting upon pursuing her personal injury claim against a hospital patient because neither the employee handbook nor any other personnel rule forbade her from doing so. However, on the premise that plaintiff's employment was at will (see *post,* p. 829), the absence of such a provision is irrelevant. If at will, the employer may discharge an employee for any reason not otherwise proscribed by law. It is not necessary for the employer to find contractual support for its right to discharge for the particular reason involved. In the absence of a precise written policy to which the employer is bound, the employer is free to consider the particular circumstances of the situation at hand in determining whether to insist that an employee refrain from taking judicial action against another. In this case, the assault against plaintiff appears to have been quickly interrupted by other employees; were plaintiff's injuries more aggravated, the hospital might have felt differently about permitting her to proceed with her suit. No unfairness resulted from the uncertainty of defendant's policy since plaintiff was given explicit notification of the hospital's position and an opportunity to comply before she was terminated. In all events, the absence of a written policy on this subject makes the discharge no more a violation of a fundamental public policy than if the hospital's practice had been spelled out in the employee handbook.

Finally, plaintiff makes a number of estoppel-like arguments based upon the fact that at the same time that defendant insisted she drop her suit against the former hospital patient, the hospital filed a complaint in intervention incorporating the allegations of plaintiff's complaint and seeking to recover from the patient the workers' compensation benefits paid to plaintiff. However, the filing of this complaint did not estop defendant from asserting that the hospital disfavored suits against its patients, much less did it show that the reasons given for plaintiff's termination were pretextual. Defendant made clear that it wanted the litigation dismissed and gave no indication that it would proceed with its complaint in intervention if plaintiff dismissed her suit. However, recognizing that it had no ability to force plaintiff to do so,

the hospital merely preserved its lien against any recovery that plaintiff might obtain. There was no inconsistency in protecting its interests in this manner and, moreover, no reliance by plaintiff that would create an estoppel.

Therefore, plaintiff was not wrongfully terminated in violation of public policy, and summary adjudication of this cause of action was properly granted against her.

### 2. Other Causes of Action

■ Plaintiff's second cause of action, for sex discrimination in violation of the Fair Employment and Housing Act, Government Code section 12920 et seq. (FEHA), was also properly summarily adjudicated against plaintiff. This cause of action alleged that plaintiff was terminated "because of her sex" although plaintiff variously has characterized this cause of action as being based on the claim that she was discharged because of the injury she sustained in the assault, because she filed a complaint for a sexual assault, and because she complained of sexual harassment. Regardless, the uncontroverted evidence submitted with respect to the summary judgment motion was that the sole reason for her discharge was the filing of her suit against a former patient whom the defendant considered to have been impaired. No competent evidence of any other reason was presented. Hence, defendant adequately negated the claim that plaintiff was terminated because of her sex or because of any consideration proscribed by FEHA, and plaintiff demonstrated no triable issue of fact that warranted denial of the summary judgment motion.

Similarly, plaintiff's third cause of action, for breach of contract, was correctly adjudicated summarily against her. There is no dispute that defendant's employee handbook and other pertinent documents stated clearly that her employment was at will, and plaintiff offered no competent evidence of any facts that would have established an implied agreement to the contrary. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 341-342 [100 Cal.Rptr.2d 352, 8 P.3d 1089]; *Davis v. Consolidated Freightways* (1994) 29 Cal.App.4th 354, 368 [34 Cal.Rptr.2d 438].) The fact that the contractual documents said nothing about not suing patients did not convert the employment relationship into one that could not be terminated for filing such a suit.

■ Finally, the trial court properly granted the summary judgment motion with respect to plaintiff's fourth and fifth causes of action, for intentional and negligent infliction of emotional distress. In opposition to defendant's motion, plaintiff presented no evidence of any significant facts concerning her discharge beyond the letter warning plaintiff that she would

be deemed to have resigned if she did not dismiss her action, and the second letter advising her that because of her failure to do so, she was deemed to have resigned. This conduct, which we have held above did not violate public policy, certainly was not so outrageous as to support a claim for intentional infliction of emotional distress (*Kiseskey v. Carpenters' Trust for So. California* (1983) 144 Cal.App.3d 222, 229 [192 Cal.Rptr. 492]), and breached no duty of care that would support recovery on a theory of negligence (*Semore v. Pool* (1990) 217 Cal.App.3d 1087, 1105 [266 Cal.Rptr. 280]). Moreover, there was nothing that took defendant's conduct beyond what is to be expected from a normal employment relationship, so that these emotional distress claims were barred by the Workers' Compensation Act. (*Hunter v. Up-right, Inc., supra,* 6 Cal.4th at p. 1183; *Goldman v. Wilsey Foods, Inc.* (1989) 216 Cal.App.3d 1085 [265 Cal.Rptr. 294].)

### 3. Denial of Leave to Amend

■ While defendant's summary judgment motion was pending, plaintiff filed a motion for leave to file an amended complaint or alternatively to continue the hearing on the summary judgment motion so that additional discovery could be taken. Plaintiff's first request was conditional; she requested leave to amend "[i]f this Court believes that plaintiff's Complaint has not been drawn with sufficient particularity, or that additional evidence on any issues is necessary." Since the trial court's ruling on the summary judgment motion was not based on any correctible deficiency in the form of the complaint or missing piece of evidence, it is questionable whether plaintiff can be said to have made a motion that was denied. Moreover, the proposed amended complaint that plaintiff submitted added no new facts that would have affected the outcome, and plaintiff has not even attempted to demonstrate that her new theories—violation of Civil Code section 52.1 and failure to prevent harassment by the patient who assaulted her—had any greater merit. As to the alternative request, there had already been ample time for discovery, and plaintiff provided no indication of what additional evidence she anticipated that might have affected disposition of the summary judgment motion. There was no abuse in the denial of this motion. (*Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 486-488 [48 Cal.App.4th 471, 55 Cal.Rptr.2d 225].)

### 4. Award of Attorney Fees

■ Although we concur in the trial court's determination that plaintiff's second cause of action under the FEHA for sex discrimination lacked merit and was properly summarily adjudicated against her, we cannot agree that defendant was properly awarded attorney fees for prevailing on this cause of

action. In granting the motion for attorney fees, the trial court explained simply that it had "previously determined by summary judgment that the action was without merit." In making this award, the trial court erred in two respects. First, lack of merit is not the proper standard for awarding attorney fees against a losing plaintiff under Government Code section 12965, subdivision (b). Rather, in *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383 [15 Cal.Rptr.2d 53] (*Cummings*), the Court of Appeal for the Second District held the standard to be the same as under federal civil rights legislation as articulated in *Christianburg Garment Co. v. EEOC* (1978) 434 U.S. 412 [98 S.Ct. 694, 54 L.Ed.2d 648]. Attorney fees should be awarded to a prevailing defendant " ' "only where the action brought is found to be unreasonable, frivolous, meritless or vexatious," ' " and " 'the term "meritless" is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case . . . .' " (*Cummings, supra,* at p. 1387.)

The award of attorney fees also must be set aside because the trial court failed to make the express written findings that are necessary to support an award against the plaintiff under FEHA. (*Cummings, supra,* 11 Cal.App.4th at p. 1388; *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859, 867-868 [110 Cal.Rptr.2d 903] (*Rosenman*).) In imposing "a non-waivable requirement that trial courts make written findings reflecting the *Christianburg/Cummings* standard in every case where they award attorney fees in favor of defendants in FEHA actions,"[4] the court accepted the argument that "such a requirement serves the important public purpose of ensuring fees are awarded only in the rare cases envisioned by the Supreme Court in *Christianburg*, so as to avoid discouraging litigants from bringing meritorious but not airtight claims to court. . . . [¶] . . . [R]equiring such findings will go a long way towards limiting defendants' receipt of attorney fee awards to the extreme cases envisioned by *Cummings* and *Christianburg*." (*Rosenman,* at pp. 867-868.)

While the absence of findings in some cases may require a remand for the purpose of making the necessary findings, it is not necessary to return the case to the trial court if "the appellate court determines that no such findings reasonably could be made from the record." (*Rosenman, supra,* 91 Cal.App.4th at p. 868; *Cummings, supra,* 11 Cal.App.4th at p. 1388.) That is certainly true in this case. As in *Rosenman,* "we find no parallel between the present case and the egregious and/or baseless plaintiffs' claims in the cases discussed in *Cummings*" where attorney fees were imposed upon a plaintiff. (*Rosenman,* at p. 869.) So far as the record discloses, at no time did

---

[4]*Rosenman* also held that the trial court should make explicit findings on the plaintiff's ability to pay the attorney fees. (*Rosenman, supra,* 91 Cal.App.4th at pp. 868-869, fn. 42.)

plaintiff distort the facts or " 'continuously seek to avoid adverse legal rulings by intentionally submitting renewed motions which disguised the subject matter of previously denied motions.' " (*Id.* at pp. 869-870.) While plaintiff failed to adduce any evidence of sex discrimination or of the other motivations to which her counsel has adverted in defending the second cause of action, it is apparent that this cause of action was merely an attempt to articulate a different legal theory to support her contention that defendant acted wrongfully in discharging her for proceeding with her sexual battery claim against the hospital patient. Whether plaintiff's claim was so groundless as to warrant attorney fees against her must be evaluated with respect to her entire complaint, not simply the FEHA cause of action. (*Delaney v. Superior Fast Freight* (1993) 14 Cal.App.4th 590, 600 [18 Cal.Rptr.2d 33] [even though it had "long been the law in California" that plaintiff could not prevail on FEHA claim, no abuse of discretion to deny attorney fees to defendant since plaintiff sought relief under other theories, and "[a] civil action is based upon the injury to the plaintiff, and not any particular legal theory"].) The single case cited by defendant to justify awarding fees against plaintiff based upon consideration of only the second cause of action is inapposite. In *Moss v. Associated Press* (C.D.Cal. 1996) 956 F.Supp. 891, 896, the court awarded fees to the defendant from the date on which it found the plaintiff should have realized that continued litigation was unreasonable; it did not distinguish between any of the three causes of action on which the action had been based. As the principal discussion above makes clear, plaintiff's action, while ultimately failing, can hardly be considered as frivolous, and the trial court did not consider it such. Therefore, it was an abuse of discretion to have imposed attorney fees on plaintiff.

## DISPOSITION

For the reasons stated above, the judgment in favor of defendant is affirmed. The order awarding defendant attorney fees is reversed. Defendant shall recover its costs on this appeal.

McGuiness, P. J., and Corrigan, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 24, 2002. Werdegar, J., and Brown, J., did not participate therein.