[No. D042431. Fourth Dist., Div. One. June 30, 2004.]

JOAN GRINZI, Plaintiff and Appellant, v.
SAN DIEGO HOSPICE CORPORATION, Defendant and Respondent.

74

**COUNSEL**

John Y. Tremblatt for Appellant.

Gordon & Rees and Margaret C. Bell for Respondent.

**OPINION**

**HUFFMAN, J.**—Joan Grinzi (Grinzi) appeals a dismissal of her first amended complaint after the court sustained, without leave to amend, the demurrer of San Diego Hospice Corporation (Hospice). Grinzi contends she was wrongfully terminated from employment in violation of established public policy supported by the First Amendment of the United States Constitution and Labor Code[1] sections 96, subdivision (k), and 98.6.

We find the First Amendment free speech provision fails to establish public policy against terminations by private employers for speech-related activities because this provision applies only to government actions and expresses no public policy regarding terminations by private employers. Further, we hold section 96, subdivision (k), provides only procedure under which the Labor Commissioner shall exercise jurisdiction rather than independent public policy creating a private right of action. (*Barbee v. Household Automotive Finance Corp.* (2003) 113 Cal.App.4th 525, 533 [6 Cal.Rptr.3d 406] (*Barbee*).) Finally, we find the Legislature did not intend section 98.6 to establish public policy against terminations for conduct not protected under the Labor Code. Therefore, we affirm the judgment of dismissal.

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

Grinzi worked as a case manager for Hospice, a private corporation, for about 13 years. During her employment, she received a promotion, commendations and raises. Hospice never warned or disciplined her, and she performed all her duties and obligations. In early 2002, Grinzi alleges Hospice fired her explaining her termination was because of her membership in Women's Garden Circle, an investment group Hospice believed to be an illegal pyramid scheme. A few days later, Hospice told her she was terminated for wrongful use of Hospice's email system. Grinzi alleges this second explanation was a pretext. She asserts the true reason for her termination was her lawful conduct, outside working hours, consisting of membership in Women's Garden Circle.

Grinzi sued Hospice for wrongful termination in violation of public policy, breach of implied contract and intentional infliction of emotional distress. Hospice filed a cross-complaint and a general demurrer. The court sustained Hospice's demurrer with leave to amend. Grinzi answered the cross-complaint and filed a first amended complaint alleging a single cause of action, wrongful termination in violation of public policy. The court sustained Hospice's demurrer to Grinzi's first amended complaint, without leave to amend, and dismissed the action. The parties have stipulated to stay proceedings on Hospice's cross-complaint until resolution of this appeal.

## DISCUSSION

## I

### *STANDARD OF REVIEW*

A demurrer tests the legal sufficiency of the complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Therefore, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. (*Hill v. Miller* (1966) 64 Cal.2d 757, 759 [51 Cal.Rptr. 689, 415 P.2d 33].) "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].) The trial court exercises its discretion in declining to grant leave to amend. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) If it is reasonably possible the pleading can be cured by amendment, the trial court abuses its discretion by not granting leave to amend. (*Ibid.*) The plaintiff has the burden of proving the possibility of cure by amendment. (*Ibid.*)

## II

### CONTENTIONS OF WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

 Section 2922[2] provides a presumption of employment at will, terminable at any time by either party upon notice. Absent a contract overcoming this presumption, "the employee can be fired with or without good cause." (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 665 [254 Cal.Rptr. 211, 765 P.2d 373].) The employer's right to discharge at-will employees is, however, limited by public policy. (*Ibid.*) Although an at-will employee may be discharged "for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy." (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1094 [4 Cal.Rptr.2d 874, 824 P.2d 680], overruled in part on other grounds by *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6 [78 Cal.Rptr.2d 16, 960 P.2d 1046] (*Green*).) When an employee is discharged in violation of "fundamental principles of public policy," the employee "may maintain a tort action and recover damages traditionally available in such actions." (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330].) The court has recognized four sources of public policy to support such claims: "the employee (1) refused to violate a statute; (2) performed a statutory obligation; (3) exercised a constitutional or statutory right or privilege; or (4) reported a statutory violation for the public's benefit." (*Green, supra,* 19 Cal.4th at p. 76.)

 Courts must make policy determinations " 'with great care and due deference to the judgment of the legislative branch' . . . to avoid judicial policymaking. [Citation.]" (*Green, supra,* 19 Cal.4th at p. 76.) Consequently, to support a claim for tortious discharge, the violated policy (1) "must be supported by either constitutional or statutory provisions;" (2) "be 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual;" (3) "have been articulated at the time of the discharge;" and (4) "be 'fundamental' and 'substantial.' " (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 889–890 [66 Cal.Rptr.2d 888, 941 P.2d 1157] (*Stevenson*).)

Limiting tortious discharge claims to those supported by constitutional or statutory provisions "best serves the Legislature's goal to give law-abiding employers broad discretion in making managerial decisions." (*Green, supra,*

---

[2] Section 2922 provides: "An employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means an employment for a period greater than one month."

19 Cal.4th at pp. 79–80.) It also ensures "employers have adequate notice of the conduct that will subject them to tort liability to the employees they discharge." (*Stevenson, supra,* 16 Cal.4th 880, 889.) A statute's exclusion of certain employers from its requirements precludes a finding that a fundamental policy supported by that statute would extend to the excluded employers. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 135 [32 Cal.Rptr.2d 275, 876 P.2d 1074] (*Jennings*) [no extension of public policy against age discrimination to small employers excluded under FEHA].) To make such a finding would unreasonably require employers to realize they must comply with a law from which they are exempted or suffer the possibility of tort liability. (*Id.* at pp. 135–136.)

Here, Grinzi contends she was fired for exercising her First Amendment free speech rights while engaging in lawful conduct during nonworking hours off the employer's premises. She asserts the First Amendment of the United States Constitution[3] supports public policy against terminations of employment for the exercise of free speech. Further, Grinzi argues sections 96, subdivision (k) and 98.6 support a public policy against terminations for lawful conduct occurring during nonworking hours away from the employer's premises.

### III

#### FIRST AMENDMENT DOES NOT SUPPORT PUBLIC POLICY AGAINST PRIVATE EMPLOYER TERMINATIONS

■ To support public policy sufficient for a tortious discharge claim, the First Amendment[4] free speech provision must delineate the fundamental policies at issue. (*Sequoia Ins. Co. v. Superior Court* (1993) 13 Cal.App.4th 1472, 1480 [16 Cal.Rptr.2d 888].) The provision does not have to specifically

---

[3] Grinzi also makes reference to "similar provisions of the California Constitution" without supporting citation to a specific constitutional provision. Such vague references require the court "to guess at the nature of the public policies involved, if any." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1257 [32 Cal.Rptr.2d 223, 876 P.2d 1022].) "This kind of showing is plainly insufficient to create an issue of *material* fact justifying a trial on the merits of [Grinzi's] claims." (*Ibid.*) Consequently, we do not reach the issue of whether a provision of the California Constitution does support public policy against terminations such as this. On this issue, Grinzi has not met her burden of showing how she can amend her complaint to allege a prima facie case and how that amendment will change the legal effect of the pleading. (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406].)

[4] The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (U.S. Const., 1st Amend.)

prohibit the employer's precise act, but it "must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law." (*Ibid.*; *Turner v. Anheuser-Busch, Inc., supra,* 7 Cal.4th 1238, 1256, fn. 9.) Here, the First Amendment free speech provision expresses a guarantee only against action taken by the government. (*Hudgens v. N.L.R.B.* (1976) 424 U.S. 507, 513 [47 L.Ed.2d 196, 96 S.Ct. 1029].) As such, no protection or redress is provided by the First Amendment itself against "a private corporation or person who seeks to abridge the free expression of others." (*Ibid.*) For example, a newspaper publisher can fire an at-will employee "based on dissatisfaction with the content of or views expressed by the reporter's writing." (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1391 [88 Cal.Rptr.2d 802].) Consequently, the First Amendment does not sufficiently describe the type of conduct alleged here, a *private* employer terminating an employee for the exercise of free speech, to enable the employer to know the fundamental public policies expressed by the First Amendment prohibited such a termination. (*Sequoia Ins. Co., supra,* 13 Cal.App.4th at p. 1480 [16 Cal. Rptr.2d 888]; see also *Sullivan v. Delta Air Lines, Inc.* (1997) 58 Cal.App.4th 938, 947 [68 Cal.Rptr.2d 584] [holding policy underlying statute did not support a tortious discharge claim because it did not clearly prohibit any employer conduct].)

██ Further, substantive limitations in constitutional provisions articulating a public policy "circumscribe the common law wrongful discharge cause of action." (*City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1159 [77 Cal.Rptr.2d 445, 959 P.2d 752].) With respect to its substantive limitation to state action, the First Amendment is analogous to the Fifth Amendment rights to counsel and against self-incrimination. (*TRW, Inc. v. Superior Court* (1994) 25 Cal.App.4th 1834, 1844 [31 Cal.Rptr.2d 460].) In *TRW*, the court found a private employer did not violate public policy under the Fifth Amendment by discharging an employee who refused to attend an internal security meeting without counsel because TRW was not constrained by the Fifth Amendment. (*Id.* at pp. 1844, 1848–1849, 1852–1853.) Additionally, the First Amendment right of access to the courts[5] does not support a public policy sufficient for a tortious discharge claim against private employers discharging employees who sue customers, clients or patients. (*Jersey v. John Muir Medical Center, supra,* 97 Cal.App.4th 814, 825.) Similarly, we find the First Amendment prohibition against government intrusions into free-speech fails to establish public policy forbidding free-speech-based terminations by private employers. To find otherwise would unreasonably require private employers to realize they must comply with requirements from which

---

[5] Right of access to the courts arises from the First Amendment right to petition the government for redress of grievances. (*Jersey v. John Muir Medical Center* (2002) 97 Cal.App.4th 814, 821 [118 Cal.Rptr.2d 807].)

they are exempt or suffer the possibility of tort liability. (*Jennings, supra,* 8 Cal.4th at pp. 135–136; *Sequoia Ins. Co., supra,* 13 Cal.App.4th at p. 1480.)

■ The First Amendment free speech rights are distinguishable from the California constitutional right to privacy[6] because the privacy right is "an inalienable right which may not be violated by anyone" including private parties. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 18, 26 [26 Cal.Rptr.2d 834, 865 P.2d 633].) As the right to privacy extends to acts of private employers, it provides "a fundamental principle of public policy" sufficient to state a cause of action for wrongful termination against a private employer. (*Semore v. Pool* (1990) 217 Cal.App.3d 1087, 1098 [266 Cal.Rptr. 280].)

■ California's prohibition against sex discrimination[7] is also distinguishable as it applies to private as well as state action and "unquestionably reflects a fundamental *public policy* against discrimination." (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 90 [276 Cal.Rptr. 130, 801 P.2d 373].) The court in *Rojo* acknowledged state action, in some cases, may be irrelevant to the establishment of public policy against private action. (*Ibid.*) For instance, the Fifth, Fourteenth, and Fifteenth Amendments apply to state action but "nevertheless evidence a definite national policy against discrimination because of race or color." (*James v. Marinship Corp.* (1944) 25 Cal.2d 721, 739–740 [155 P.2d 329].) Policies against age, race and sex discrimination, however, are considered "unquestionably substantial and fundamental" because this discrimination violates "the basic principle that each person should be judged on the basis of individual merit, rather than by reference to group stereotypes." (*Stevenson, supra,* 16 Cal.4th at pp. 895–896.) Free speech policy is distinguished from discrimination policy because private free speech limitations do not typically involve discrimination based on group stereotypes.

Few courts have squarely addressed whether the First Amendment free speech provision supports a claim of tortious discharge in violation of public policy against a private employer, absent allegations of state action. Notably, the court in *Novosel v. Nationwide Ins. Co.* (3d Cir. 1983) 721 F.2d 894, held the First Amendment supports a claim under Pennsylvania law of a public policy in tortious discharge cases against private employer terminations for the exercise of free speech rights. (*Id.* at p. 900 [private employee discharged

---

[6] California Constitution, article I, section 1 provides for certain inalienable rights: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

[7] Sex discrimination includes sexual harassment and is prohibited by the California Constitution, article I, section 8, which provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

for refusing to lobby the state legislature on the employer's behalf].) In so holding, the court stated, "The protection of important political freedoms . . . goes well beyond the question whether the threat comes from state or private bodies." (*Ibid.*) However, other courts have not adopted, and even criticize, this approach. (*Edmondson v. Shearer Lumber Products* (Idaho 2003) 75 P.3d 733, 738–739 [*Novosel* policy not "endorsed by any other court"]; *Shovelin v. Central New Mexico Elec. Co-op., Inc.* (1993) 115 N.M. 293 [850 P.2d 996, 1010] [similar]; *Tiernan v. Charleston Area Medical Center, Inc.* (1998) 203 W.Va. 135 [506 S.E.2d 578, 588–591] [similar].) We do not find it persuasive and also decline to adopt it.

Instead, we find agreement with our approach in the decisions of sister state and federal courts addressing this issue. (*Prysak v. R.L. Polk Co.* (1992) 193 Mich.App. 1 [483 N.W.2d 629, 634] [claim of tortious discharge failed because a private employer is not bound by constitutional provisions guaranteeing freedom of speech]; *Johnson v. Mayo Yarns, Inc.* (1997) 126 N.C. App. 292 [484 S.E.2d 840, 843] [claim of wrongful discharge failed because conduct in private employment is not protected by the Constitution]; *Barr v. Kelso-Burnett Co.* (1985) 106 Ill.2d 520 [478 N.E.2d 1354, 1357, 88 Ill.Dec. 628] [claim of retaliatory discharge failed because the public policy mandated by the Constitution "is that the power of government, not private individuals, be restricted"]; *Edmondson v. Shearer Lumber Products, supra,* 75 P.3d 733, 739 [no wrongful termination cause of action against a private employer who terminates the employee because of the exercise of free speech]; *Manson v. Little Rock Newspapers, Inc.* (8th Cir. 2000) 200 F.3d 1172, 1173 [no claim for wrongful discharge because private entity defendant "is legally incapable of violating anyone's First Amendment rights"].)

The Connecticut Legislature, desiring a contrary outcome to the above approach, passed legislation specifically creating a cause of action against private employers for discharges based on the employee's exercise of First Amendment free speech rights. (Conn. Gen. Stat. Ann., § 31-51q (West 2003).)[8] In the absence of such action by the California Legislature, we cannot infer such a policy from the First Amendment itself and must defer

---

[8] This Connecticut statute, enacted in 1983, provides: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer." (Conn. Gen. Stat. Ann., § 31-51q (West 2003).)

" 'to the judgment of the legislative branch' . . . to avoid judicial policymaking. [Citation.]" (*Green, supra,* 19 Cal.4th at p. 76.)

 For these reasons, we conclude the First Amendment free speech provision does not support a public policy on which to base a tortious discharge claim, against a private employer's termination of an employee for the employee's exercise of such First Amendment rights. Because we find a lack of constitutional support for such a private right of action, we need not reach the subsidiary issues of public benefit, articulation of the policy at the time of discharge, or the fundamental and substantial nature of the policy. (*Stevenson, supra,* 16 Cal.4th at pp. 889–890.)

## IV

### SECTION 96, SUBDIVISION (K), DOES NOT INDEPENDENTLY EXPRESS PUBLIC POLICY

 Recently, this court held section 96, subdivision (k),[9] "does not set forth an independent public policy that provides employees with any substantive rights, but rather, merely establishes a procedure by which the Labor Commissioner may assert, on behalf of employees, recognized constitutional rights." (*Barbee, supra,* 113 Cal.App.4th 525, 533.) The plain language of section 96 does not describe public policy but rather "simply outlines the types of claims over which the Labor Commissioner shall exercise jurisdiction." (*Barbee, supra,* at p. 535.) Therefore, section 96, subdivision (k), does not create any support for this claim of wrongful termination in violation of public policy.

## V

### POLICY EXPRESSED BY SECTION 98.6 LIMITED TO CONDUCT PROTECTED BY THE LABOR CODE

 For the first time on appeal, Grinzi raises section 98.6[10] as a statutory provision supporting public policy against termination for lawful conduct

---

[9] Section 96 provides in pertinent part: "The Labor Commissioner and his or her deputies and representatives authorized by him or her in writing shall, upon the filing of a claim therefore by an employee, or an employee representative authorized in writing by an employee, with the Labor Commissioner, take assignments of: [¶] . . . [¶] (k) Claims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises."

[10] Section 98.6 provides, in pertinent part: "(a) No person shall discharge an employee or in any manner discriminate against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, *including the conduct described in subdivision (k) of Section 96*, and Chapter 5 of Part 3 of Division 2, or because

during nonworking hours. Generally, a party is not permitted "to change [her] position and adopt a new and different theory on appeal" because doing so would be unfair both to the court and to the opposing litigant. (*Ernst v. Searle* (1933) 218 Cal. 233, 240–241 [22 P.2d 715].) However, the appeal of a judgment of dismissal after sustaining of a demurrer without leave to amend requires the consideration of whether the allegations state a cause of action under any legal theory. (*Economic Empowerment Foundation v. Quackenbush* (1997) 57 Cal.App.4th 677, 684, fn. 5 [67 Cal.Rptr.2d 323].) Under these circumstances, new theories may be advanced for the first time on appeal. (*Ibid.*)

 ■ In interpreting section 98.6, we must " 'ascertain the intent of the Legislature in order to effectuate the purpose of the law.' " (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 997 [109 Cal.Rptr.2d 454].) First, we look to the words of the statute giving " 'effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage.' " (*Ibid.*) We must give the statute " ' "a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. [Citations.]" ' " (*Kotler v. Alma Lodge* (1998) 63 Cal.App.4th 1381, 1390–1391 [74 Cal.Rptr.2d 721] (*Kotler*).) "If the language of a statute is clear, we should not add to or alter it to accomplish a purpose which does not appear on the face of the statute or from its legislative history." (*Id.* at p. 1391.)

A. *Statutory Prohibition against Terminations for Conduct Described in Section 96, Subdivision (k).*

 ■ Section 98.6, subdivision (a) prohibits, in relevant part, termination because "the employee . . . engaged in any conduct delineated in this chapter,

---

the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights, which are under the jurisdiction of the Labor Commissioner, or has testified or is about to testify in any such proceeding *or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her.* [¶] (b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of his or her employment because the employee engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 of Part 3 of Division 2, or because the employee has made a bona fide complaint or claim to the division pursuant to this part shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by such acts of the employer. Any employer who willfully refuses to hire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for such rehiring or promotion by a grievance procedure, arbitration or hearing authorized by law, is guilty of a misdemeanor." (Italics added.)

*including the conduct described in subdivision (k) of Section 96. . . .*" (Italics added; see fn. 10, *ante*.) Subdivision (b), in relevant part, makes the willful refusal to reinstate an employee discharged for "any conduct delineated in this chapter, including conduct described in subdivision (k) of Section 96" a misdemeanor. By its plain language, this provision of 98.6, subdivision (a) limits the rights of employers to discharge at-will employees for section 96, subdivision (k) conduct. Criminalizing an act violating a statute's policy, as in section 98.6, subdivision (b), is a significant factor in determining a statute supports a substantial and fundamental public policy. (*Sullivan v. Delta Air Lines, Inc.*, *supra*, 58 Cal. App.4th at p. 946, fn. 6.)

The common law cause of action for tortious discharge, however, "cannot be broader than the . . . statute on which it depends." (*City of Moorpark v. Superior Court*, *supra*, 18 Cal.4th at p. 1159.) Our holding in *Barbee*, *supra*, 113 Cal.App.4th at page 533, found the scope of section 96, subdivision (k) was limited to " 'lawful conduct occurring during nonworking hours away from the employer's premises' " asserting *"recognized constitutional rights*." (Italics added.) Therefore, to successfully establish a tortious discharge claim under this provision of section 98.6, Grinzi must allege her discharge occurred because she asserted a recognized constitutional right. (*Barbee*, *supra*, at pp. 533–534.) As we have discussed in part III, *ante*, the First Amendment free speech guarantees at issue are only recognized against *government* interference. Grinzi does not have a recognized constitutional right protecting her against private acts implicating her employment under the First Amendment, and she has not alleged her termination resulted from a government act violating the First Amendment. Consequently, Grinzi was not terminated for exercising a recognized constitutional right as described in subdivision (k) of section 96 and as therefore proscribed by section 98.6.

B. *Statutory Prohibition against Terminations for the Exercise of "Any Rights"*

Section 98.6 also prohibits, in relevant part, termination because of "the exercise by the employee . . . on behalf of himself, herself, or others *of any rights afforded him or her.*" (Italics added; see fn. 10, *ante*.) This provision of section 98.6, subdivision (a) appears to broadly proscribe terminations for the exercise of "any rights." In amending the relevant language of section 98.6, the Legislature included an uncodified section, which is fully part of the law. (See *County of Los Angeles v. Payne* (1937) 8 Cal.2d 563, 573–574 [66 P.2d 658] [uncodified act of Legislature must be read together with provisions of codes].) " 'Statutory language should not be interpreted in isolation, but must be construed in the context of the entire statute of which it is a part, in order to achieve harmony among the parts.' "

(*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 903 [135 Cal.Rptr.2d 30, 69 P.3d 951].) This uncodified section provides findings and declarations of policy as follows: "The Legislature finds and declares that, absent the protections by the Labor Commissioner, working men and women are ill-equipped and unduly disadvantaged in any effort to assert their individual rights *otherwise protected by the Labor Code.* The Legislature finds it necessary and appropriate to provide employees an inexpensive administrative remedy for the pursuit of their rights *under the Labor Code.* The Legislature further declares that this act is necessary to further the state interest in protecting the rights of individual employees and job applicants who could not otherwise afford to protect themselves." (Stats. 2001, ch. 820, § 1, italics added.)

 By so specifying rights "otherwise protected by the Labor Code" and "under the Labor Code," the Legislature has indicated an intention to limit the proscription against terminations for the exercise of "any rights" to the exercise of those rights "otherwise protected by the Labor Code." Further, the initial portion of section 98.6, subdivision (a), proscribes terminations for several kinds of conduct delineated in "this chapter," including conduct under section 96, subdivision (k), and "Chapter 5 of Part 3 of Division 2," or filing claims or proceedings with the Labor Commissioner. (See fn. 10, *ante.*) As such, these provisions only prohibit terminations for conduct "otherwise protected by the Labor Code." In this context, the reasonable conclusion is the Legislature also intended the phrase, "any rights," in the final portion of section 98.6, subdivision (a), to similarly refer to rights "otherwise protected by the Labor Code." Consequently, for Grinzi's claim to survive under this provision, she must allege her termination occurred because she exercised a right protected *by the Labor Code.* As discussed, Grinzi does not allege she exercised such a right.

The Legislative Counsel's Digest for section 98.6 supports our conclusion. It first explains the scope of existing law regarding actions protected by the Labor Code: "Existing law prohibits an employer from discriminating against any employee because the employee has filed a claim with or instituted a proceeding before the Labor Commissioner relating to the employee's rights, because the employee testifies or will testify in such a proceeding, or because the employee exercised, on behalf of himself, herself, or others, rights afforded employees by the Labor Code. Existing law provides for reinstatement of and the payment of lost wages and work benefits to any employee who is subjected to adverse employment action because the employee filed a bona fide complaint with the Division of Industrial Relations. Existing law makes it a misdemeanor for an employer to take adverse employment action against employees who file bona fide complaints." (Legis. Counsel's Dig., Assem. Bill No. 1015 (2001–2002 Reg. Sess.).)

Next, in relevant part, the digest states: "This bill would extend [existing] provisions to apply to applicants for employment who are refused employment, not selected for a training program leading to employment, or discriminated against in any other manner. The bill would also expand existing prohibitions to include protection for employees and applicants who engage in conduct delineated in Chapter 4 of Division 1 [Div. of Labor Standards Enforcement] and Chapter 5 of Part 3 of Division 2 [Political Affiliations] of the Labor Code. . . ." (Legis. Counsel's Dig., Assem. Bill No. 1015 (2001–2002 Reg. Sess.).)

Accordingly, the digest indicates there was legislative intent to expand existing prohibitions against discrimination to include conduct *already* "delineated *in* Chapter 4 of Division 1 [Division of Labor Standards Enforcement] and Chapter 5 of Part 3 of Division 2 [Political Affiliations] of the Labor Code." However, the Digest does not support an expansion of existing prohibitions beyond the specified statutory categories. (Legis. Counsel's Dig., Assem. Bill No. 1015 (2001–2002 Reg. Sess.).)

Finally, to conclude the Legislature intended "any rights" in this context (§ 98.6, subd. (a)) to reach constitutional rights guaranteed only against governmental infringement would result in "mischief or absurdity" rather than "wise policy" when the statutory language is applied. (*Kotler, supra,* 63 Cal.App.4th at p. 1391.) Such an interpretation would severely limit an employer's "general discretion to discharge an at-will employee without cause under section 2922" and unduly interfere with "the Legislature's goal to give law-abiding employers broad discretion in making managerial decisions." (*Green, supra,* 19 Cal.4th at pp. 79–80.)

 For these reasons, we conclude neither section 96, subsection (k), nor section 98.6 adequately supports a public policy against a private employer's termination of an employee for the employee's lawful conduct, otherwise unprotected by the Labor Code, occurring during nonworking hours away from the employer's premises. Because we find statutory support for the claim is lacking, we do not reach the subsidiary issues of public benefit, articulation of the policy at the time of discharge, or the fundamental and substantial nature of the policy. (*Stevenson, supra,* 16 Cal.4th at pp. 889–890.)

## CONCLUSION

Grinzi's claim for wrongful termination of employment is invalid as a matter of law because neither a constitutional nor statutory provision sufficiently supports her claim of violation of public policy by means of her

termination. (*Stevenson, supra,* 16 Cal.4th at pp. 889–890.) Because Grinzi has failed to prove the possibility of cure by amendment, the court did not abuse its discretion by denying leave to amend. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)

DISPOSITION

The judgment of dismissal is affirmed.

McConnell, P. J., and Aaron, J., concurred.

A petition for a rehearing was denied July 16, 2004.