Filed 6/27/14  Massey v. Thrifty Payless CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMY MASSEY, | |
| Plaintiff and Appellant, | G047734 |
| v. | (Super. Ct. No. 30-2011-00525092) |
| THRIFTY PAYLESS, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Gregory Munoz, Judge.  Affirmed.

Brand Law Firm and Donny E. Brand for Plaintiff and Appellant.

Hodel Briggs Winter, Glenn L. Briggs, Theresa A. Kading and Beth C. Kearney for Defendant and Respondent.

\*          \*          \*

INTRODUCTION

Plaintiff Amy Massey appeals from the judgment entered after the trial court granted the motion for summary judgment or, in the alternative, summary adjudication, filed by Massey's former employer, defendant Thrifty Payless, Inc., doing business as Rite Aid Corporation (Rite Aid). Massey's employment with Rite Aid was terminated following her involvement in a verbal and physical altercation with a customer who challenged Massey's request to see identification in a transaction involving the purchase of alcohol. Massey filed a complaint containing claims for (1) wrongful employment termination in violation of public policy; (2) violation of Labor Code section 232.5; (3) violation of Labor Code former section 432.7; and (4) violation of Labor Code former section 98.6 and section 96, subdivision (k). (All further statutory references are to the Labor Code unless otherwise specified.) Massey contends the trial court erred by granting summary judgment because a triable issue of material fact existed whether Rite Aid's decision to terminate Massey's employment was based, at least in part, on her disclosure of working conditions within the meaning of section 232.5, subdivision (c).

We affirm. As to the causes of action for wrongful employment termination in violation of public policy (based on an alleged violation of section 232.5) and for violation of section 232.5, no triable issue of material fact exists showing Massey's employment was terminated for disclosing information about Rite Aid's working conditions within the meaning of section 232.5, subdivision (c). As to the violation of former section 432.7 claim, there was no evidence showing Massey was ever arrested or detained by police, much less discharged as a result of any such police action, within the meaning of that statute. As to the violation of former section 98.6 and section 96, subdivision (k) claim, summary judgment was properly granted because those statutes do not provide a private right of action.

2

## SUMMARY OF UNDISPUTED FACTS AND ADDITIONAL EVIDENCE PRODUCED BY MASSEY IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

In July 2011, Massey had been employed by Rite Aid for almost 20 years. On July 10, 2011, a man and a woman approached Massey, who was an assistant manager of a Rite Aid store and working the cash register at the time, to purchase two cases of beer. Massey asked for identification and the male customer provided his identification. Massey asked the female customer for her identification as well. The customers asked why she needed to see the female customer's identification and Massey explained that if she suspected they were both going to drink the alcohol, she had the right to ask them both for identification. The customers questioned Massey and became agitated, challenging her authority to request additional identification. The female customer called Massey "a fucking whore." Massey responded by saying the female customer was "acting like a bitch" and "she needed to get out of my store."

Massey obtained the female customer's identification, and the male customer gave Massey money for the beer. As Massey was giving the female customer the change, the female customer "grabbed the receipt from the register, [and] threw it in [Massey's] face cutting [her] forehead." Massey "smacked" the female customer on the shoulder, and said, "don't hit me." At her deposition, Massey acknowledged her response was not appropriate, and stated it would have been better if she had backed away and asked the customers to leave. The female customer slapped Massey across the face, causing her to suffer a black eye. The customers walked away. Massey followed them out of the store, while she attempted to call 911.

A loss prevention agent and a pharmacy technician followed the customers to their car. Massey saw the male customer shove the loss prevention agent. The two

3

customers got into the car and drove off. A couple of customers wrote down the license plate number of the car and Massey gave that information to the loss prevention agent. When Massey reached the 911 operator, she told the operator that she had been assaulted by a customer. Sheriff deputies were dispatched to the store. They asked Massey if she wanted the female customer arrested, and Massey responded, "yes." She did not remember talking to the deputies about safety issues at the store.

Massey later found out the female customer had been located and arrested. Massey was never arrested, put in a squad car, or taken to a station. She never thought she was suspected of any criminal activity and did not develop a criminal record relating to the incident. She had voluntarily spoken with law enforcement after she had called 911.

On July 10, 2011, Massey posted on her Facebook page a picture of her eye with the statement: "Hazards of working with the disfunctional (sic) public." In response to comments she received to her post, Massey also posted the following statements on her Facebook page: (1) the incident happened "because I carded them both for beer"; (2) "Nobody told me this was a violent job!! Black eye courtesy of a dumbass bitch"; (3) "they tracked them down and arrested them at a family BBQ"; and (4) "Customer. She and her boyfriend are sleeping behind bars tonight." Massey's Facebook page stated she was an assistant manager for Rite Aid and also contained the Rite Aid logo.

Massey's employment was thereafter terminated. She was told it was "because of the incident that occurred."

Rite Aid's standards of conduct and business ethics stated: "[T]he company will not tolerate any level of violence in the workplace or in any work-related setting" and "[a]ssociates who violate this Code and other Company policies and procedures may be subject to disciplinary action, up to and including discharge." In addition, "Rite Aid's Discipline Guidelines policy provides that '[t]her[e] are conduct

4

violations for which the only viable disciplinary action is termination' and that such violations include, '[t]hreats or acts of violence or physical intimidation against customers or associates.'" Massey was aware of Rite Aid's policies.

PROCEDURAL BACKGROUND

In November 2011, Massey filed a complaint against Rite Aid, containing claims for (1) wrongful employment termination in violation of public policy; (2) violation of section 232.5; (3) violation of former section 432.7; and (4) violation of former section 98.6 and section 96, subdivision (k). The complaint also sought a punitive damages award. The complaint alleged Rite Aid was liable for wrongful employment termination in violation of public policy because Massey's employment was terminated as a result of her being the victim of a crime and in an effort "to appease the customers involved in the incident out of fear of possible legal action by the customer against RITE AID, and the negative publicity that would ensue." The complaint also alleged Rite Aid violated section 232.5 by discharging Massey for disclosing Rite Aid's unsafe working condition (namely, insufficient security personnel) to law enforcement.

The violation of former section 432.7 claim was based on the allegation Massey's employment was terminated because she was involved in a police situation (a detention) at work, which did not result in her being charged with or convicted of any crime. The claim for a violation of former section 98.6 and section 96, subdivision (k) was based on the allegation Massey's employment termination resulted from her engaging in lawful conduct "while she was either off work completely, or on an authorized work break off premises" (namely, posting comments and a picture of her black eye on her Facebook page).

Rite Aid moved for summary judgment or, in the alternative, summary adjudication on the grounds, inter alia, no triable issues of material fact existed as to any of Massey's claims and no private right action existed to enforce a violation of former

5

section 98.6 and section 96, subdivision (k). In its motion, Rite Aid also sought summary adjudication on the issue that punitive damages were not available to Massey, as a matter of law, because she "cannot prove that a Rite Aid director, officer, or 'managing agent' committed, authorized, or ratified any acts of fraud, oppression, or malice."

Massey sought a continuance of the hearing on the motion for summary judgment by ex parte application, brought on the ground she required the opportunity to conduct further discovery to oppose the motion. Massey's ex parte application was denied without prejudice. In the opposition to the motion for summary judgment, Massey renewed her request for a continuance of the hearing on the motion for summary judgment, asserting the same ground as contained in her ex parte application.

The trial court granted the motion for summary judgment, stating: "Moving party has presented sufficient evidence to meet its initial burden under [Code of Civil Procedure section] 437c[, subd. ](p)(2) to show that plaintiff cannot establish the essential element of causation as to each cause of action pled in the complaint, in that moving party has presented evidence showing that plaintiff was terminated for a legitimate nondiscriminatory and nonretaliatory reason: plaintiff's violation of defendant's zero-tolerance policy against workplace violence. . . . Accordingly, the burden of proof shifts to plaintiff to present 'substantial' evidence sufficient to create a triable issue of fact that moving party's proffered nondiscriminatory reason was a pretext. [Citations.] [¶] Plaintiff's evidence in opposition to these facts contends that moving party violated Labor Code [section] 232.5 by relying on plaintiff's Facebook postings as a motivating factor in the decision to terminate plaintiff. While moving party argues that this is not pled in connection with the first, third or fourth causes of action, each cause of action does incorporate factual allegations of the complaint, including the al[l]egations at [paragraph] 21 of the complaint regarding the Facebook postings. However, plaintiff's evidence is insufficient to create a triable issue as to whether defendant violated Labor Code [section] 232.5 and/or whether plaintiff's Facebook postings was a motivating

6

factor in defendant's decision to terminate plaintiff.  Accordingly, the motion is granted.  [¶] Plaintiff's request for a continuance is denied, as the declarations in support of this request do not set forth what facts necessary to justify opposition may exist.  [Citation.]"

Judgment was entered in favor of Rite Aid.  Massey appealed.

DISCUSSION

I.

APPLICABLE BURDENS OF PROOF FOR SUMMARY JUDGMENT AND ADJUDICATION AND STANDARD OF REVIEW

"We review orders granting summary judgment or summary adjudication de novo.  [Citations.]  A motion for summary judgment or summary adjudication is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  [Citations.]"  (*Mooney v. County of Orange* (2013) 212 Cal.App.4th 865, 872.)  "'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case . . . ."  [Citation.]'  [Citation.]  '[O]nce a moving defendant has "shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established," the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ."  [Citations.]'  [Citation.]"  (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)  We ""'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'""  (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

7

II.

THE WRONGFUL EMPLOYMENT TERMINATION IN VIOLATION OF PUBLIC POLICY CLAIM AND THE VIOLATION OF SECTION 232.5 CLAIM FAIL BECAUSE MASSEY DID NOT DISCLOSE INFORMATION ABOUT RITE AID'S WORKING CONDITIONS WITHIN THE MEANING OF SECTION 232.5, SUBDIVISION (c).

"When a plaintiff alleges retaliatory employment termination either as a claim under the FEHA [(the California Fair Employment and Housing Act) (Gov. Code, § 12900 et seq.)] or as a claim for wrongful employment termination in violation of public policy, and the defendant seeks summary judgment, California follows the burden-shifting analysis of *McDonnell Douglas Corp. v*[.] *Green* (1973) 411 U.S. 792 . . . to determine whether there are triable issues of fact for resolution by a jury. [Citation.] In the first stage, the 'plaintiff must show (1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.' [Citation.] If the employee successfully establishes these elements and thereby shows a prima facie case exists, the burden shifts to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces evidence showing a legitimate reason for the adverse employment action, 'the presumption of retaliation """"drops out of the picture,""""' [citation], and the burden shifts back to the employee to provide 'substantial responsive evidence' that the employer's proffered reasons were untrue or pretextual [citation]." (*Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1108-1109.)

In the complaint, the claim for wrongful employment termination in violation of public policy[1] was based on the allegation, inter alia, that Massey was

---

[1] The legal principles that underlie a claim for wrongful employment termination in violation of public policy are well established. "Either party to a contract of employment without a specified term may terminate the contract at will [citation], but

discharged in violation of public policy protecting crime victims. The complaint alleged Rite Aid, after ignoring Massey's status as a crime victim, discharged her in order to appease the customers who were involved in the incident and to avoid negative publicity. Massey has since abandoned the theory that the public policy of protecting crime victims is the basis for the wrongful employment termination in violation of public policy claim, and we do not address it further.

As pointed out by the trial court in the minute order granting the motion for summary judgment, the complaint also stated its general allegations, which precede the claim for wrongful employment termination in violation of public policy, were incorporated by reference to support all four causes of action contained in the complaint. Those general allegations included the allegation that Massey had posted a picture of her bruised eye on her Facebook page with the comment, "Hazards of working with the disfunctional [sic] public!!"

Pursuant to Massey's argument in opposition to the motion for summary judgment, the trial court analyzed the wrongful employment termination in violation of public policy claim as also based on the public policy that an employer cannot discharge an employee for disclosing working conditions, as codified in section 232.5. Section 232.5, subdivision (c) provides that "[n]o employer" may "[d]ischarge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions." In granting summary judgment, the trial court

---

this ordinary rule is subject to the exception that an employer may not discharge an employee for a reason that violates a fundamental public policy of the state. [Citations.] To support such a cause of action, the policy in question must satisfy four requirements: 'First, the policy must be supported by either constitutional or statutory provisions. Second, the policy must be "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of the discharge. Fourth, the policy must be "fundamental" and "substantial."' [Citation.]" (*Ross v. RagingWire Telecommunciations, Inc.* (2008) 42 Cal.4th 920, 931-932.)

explained Massey's "evidence is insufficient to create a triable issue as to whether defendant violated Labor Code [section] 232.5 and/or whether [her] Facebook postings was a motivating factor in defendant's decision to terminate" her employment.

We do not need to determine whether Massey's Facebook posts constituted a substantial motivating factor in Rite Aid's decision to terminate her employment because her posts did not involve the disclosure of information about Rite Aid's "working conditions" within the meaning of section 232.5, subdivision (c). The phrase "working conditions" is not defined in section 232.5. Rite Aid, in its respondent's brief, refers to legislative history, which, it argues, elucidates the meaning of that phrase. Following oral argument, we ordered Rite Aid to provide this court with any legislative history material that is relevant to the meaning of the phrase "working conditions" within the meaning of section 232.5, and invited Massey to do the same. After Rite Aid submitted legislative history material, none of which was objected to by Massey, we invited supplemental briefing by both parties, regarding, inter alia, the meaning of the phrase "working conditions" in light of relevant legislative history and any other legal authority.

The legislative history material presented to this court includes the acknowledgment, "the phrase 'working conditions' is cited dozens of times in the Labor Code, but is not actually defined. Defining working conditions would be like defining work, each industry and profession requires various skills, protocols, attire, etc." (Sen. Com. on Labor and Industrial Relations, background information request for Assem. Bill No. 2895 (2001-2002 Reg. Sess.).) The material also includes the following definition: "Working conditions are those conditions determined by the employer as a condition of employment. For example, one must wear a blue tie. State and federal law require minimum standards of work which are considered working conditions. For example, minimum wage, Cal-OSHA [(California's Occupational Safety and Health Act of 1973) (§ 6300 et seq.)] and The Fair Labor Standards Act [of 1938 (29 U.S.C. § 201 et seq.)]

10

may be described as working conditions.  In addition, the orders, and conditions set for the various industries by the IWC [(Industrial Welfare Commission)] are considered working conditions.  [¶] Working conditions are anything the employer asks from an employee, often changing by the minute."  (*Ibid.*)

Examples of working conditions provided in the legislative history material include attire, proper behavior, break room condition, elevator maintenance, seat comfort, temperature, lighting, uniforms, hair requirements, breaks, restroom facilities, and "even one's required attitude."  (Sen. Com. on Labor and Industrial Relations, background information request for Assem. Bill No. 2895 (2001-2002 Reg. Sess.).)  In an enrolled bill report, contained within the legislative history material, working conditions are described as "(e.g., hours, workplace safety, benefits)."  (Cal. Labor and Workforce Development Agency, Enrolled Bill Rep. on Assem. Bill No. 2895 (2001-2002 Reg. Sess.) Aug. 30, 2002, p. 4.)  In an analysis from the Senate Rules Committee, the reference to working conditions is followed by "(e.g., hours, uniforms, occupation safety)."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2895 (2001-2002 Reg. Sess.) as amended Apr. 25, 2002, p. 1.)

Here, the evidence shows Massey's disclosures on her Facebook page consisted of (1) a photograph of her injured eye with the comment, "Hazards of working with the disfunctional (sic) public"; (2) the explanation that the incident happened "because I carded them both for beer"; (3) the statements, "Nobody told me this was a violent job!!  Black eye courtesy of a dumbass bitch"; and (4) the statements that "they tracked them down and arrested them at a family BBQ" and "Customer.  She and her boyfriend are sleeping behind bars tonight."

None of Massey's disclosures referred to working conditions imposed by Rite Aid either by law or by its own policy.  Massey did not suggest in her Facebook posts that the incident occurred as a result of inadequate security at the store or any other condition of her work environment.  Instead, Massey's comments show she blamed the

11

customer for causing her injury because Massey carded the customer in connection with the purchase of alcohol. Massey's posts also reflect her surprise at the random violence.

Because Massey had not disclosed working conditions within the meaning of section 232.5, subdivision (c), Rite Aid could not have violated section 232.5, subdivision (c) or be liable for wrongful employment termination in violation of public policy on the ground it violated section 232.5, subdivision (c). Summary judgment was therefore properly granted with regard to those two claims.

Because those claims fail as a matter of law, we do not address Rite Aid's argument in its respondent's brief that the wrongful employment termination in violation of public policy claim, as based on the public policy codified at section 232.5, subdivision (c), along with the violation of section 232.5 claim, is preempted by the National Labor Relations Act (29 U.S.C. § 151 et seq.). We note Rite Aid's motion for summary judgment was not based on that ground.

III.

NO TRIABLE ISSUE OF MATERIAL FACT EXISTS AS TO THE VIOLATION OF FORMER SECTION 432.7 CLAIM.

Former section 432.7, subdivision (a) provided in relevant part: "[N]or shall any employer seek from any source whatsoever, or utilize, as a factor in determining any condition of employment including hiring, promotion, termination, or any apprenticeship training program or any other training program leading to employment, any record of arrest or detention that did not result in conviction." One Court of Appeal held a private right of action is available to employees to recover damages for a violation of former section 432.7. (*Faria v. San Jacinto Unified School Dist.* (1996) 50 Cal.App.4th 1939, 1948.) In the complaint, Massey alleged, "she was terminated from Rite Aid because she was involved in a police situation (a 'detention') at work despite the

12

fact that she was never charged with or convicted of any crime." (Some capitalization omitted.)

In support of its motion for summary judgment, Rite Aid produced undisputed evidence showing Massey was not arrested or otherwise taken into custody, and had no criminal record of any kind as a result of the incident. Rite Aid produced undisputed evidence Massey voluntarily talked to law enforcement after the incident and did not believe she was considered a suspect.

Even if there were evidence Massey had been arrested or detained, there is no evidence Massey's contact with law enforcement was considered by Rite Aid in its determination to terminate her employment.

In her appellate briefs, Massey does not analyze the former section 432.7 claim or explain why on this record it should have survived Rite Aid's motion for summary judgment. Because no triable issue of material fact exists as to the former section 432.7 claim, it fails as a matter of law.

IV.

THE CLAIM FOR VIOLATION OF FORMER SECTION 98.6 AND SECTION 96, SUBDIVISION (k) FAILS AS A MATTER OF LAW BECAUSE THOSE STATUTES DO NOT PROVIDE A PRIVATE RIGHT OF ACTION.

In the complaint, Massey alleged her employment was terminated in violation of former section 98.6 and section 96, subdivision (k) "because she posted pictures of, and discussed, her injuries related to the incident on Facebook while she was either off work completely, or on an authorized work break off premises." Former section 98.6, subdivision (a) provided in relevant part: "No person shall discharge an employee or in any manner discriminate against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96."

13

Section 96 provides: "The Labor Commissioner and his or her deputies and representatives authorized by him or her in writing shall, upon the filing of a claim therefor by an employee, or an employee representative authorized in writing by an employee, with the Labor Commissioner, take assignments of" specified claims and liens including, as provided in subdivision (k), "[c]laims for loss of wages as a result of demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises." (§ 96, subd. (k).)

In moving for summary judgment, Rite Aid challenged the claim for violation of former section 98.6 and section 96, subdivision (k), on the ground there was no private right of action under those statutes. In *Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 77, the plaintiff contended, "she was wrongfully terminated from employment in violation of established public policy supported by the First Amendment of the United States Constitution and Labor Code sections 96, subdivision (k), and 98.6." (Fn. omitted.)

The appellate court in *Grinzi v. San Diego Hospice Corp.*, *supra*, 120 Cal.App.4th at page 77, concluded the trial court properly sustained, without leave to amend, the defendant employer's demurrer to the plaintiff's wrongful employment termination in violation of public policy claim, stating: "We find the First Amendment free speech provision fails to establish public policy against terminations by private employers for speech-related activities because this provision applies only to government actions and expresses no public policy regarding terminations by private employers. Further, we hold section 96, subdivision (k), provides only procedure under which the Labor Commissioner shall exercise jurisdiction rather than independent public policy creating a private right of action. [Citation.] Finally, we find the Legislature did not intend section 98.6 to establish public policy against terminations for conduct not protected under the Labor Code." (See *Barbee v. Household Automotive Finance Corp.* (2003) 113 Cal.App.4th 525, 535 ["Labor Code section 96 . . . simply outlines the types

14

of claims over which the Labor Commissioner shall exercise jurisdiction" and "'has not served as an original source of employee rights against employers, but has instead provided a supplemental procedure for asserting employee claims for which the legal basis already existed elsewhere in the law'"].)

Massey has apparently abandoned her violation of former section 98.6 and section 96, subdivision (k) claim because, in her appellate briefs, she fails to analyze, or explain why the trial court erred in granting summary judgment as to, that claim.

V.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING MASSEY'S REQUEST FOR A CONTINUANCE OF THE HEARING ON THE MOTION FOR SUMMARY JUDGMENT.

Massey contends the trial court erred by denying her request for a continuance of the hearing on the motion for summary judgment, which thereby denied her the opportunity to conduct further discovery that, she argued, would help her oppose the motion. For the reasons we will explain, we conclude the trial court did not err.

Section 437c, subdivision (h) of the Code of Civil Procedure provides, in relevant part: "If it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just." A panel of this court explained: "When a party makes a good faith showing by affidavit demonstrating that a continuance is necessary to obtain essential facts to oppose a motion for summary judgment, the trial court must grant the continuance request. [Citation.] 'Continuance of a summary judgment hearing is not mandatory, however, when no affidavit is submitted or when the submitted affidavit fails to make the necessary showing under [Code of Civil Procedure] section 437c, subdivision (h). [Citations.] Thus, in the absence of an affidavit that requires a

15

continuance under section 437c, subdivision (h), we review the trial court's denial of appellant's request for a continuance for abuse of discretion.'" (*Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1428.)

A declaration in support of a motion to continue a summary judgment hearing "should show the following: (1) '*Facts* establishing *a likelihood that controverting evidence may exist* and *why* the information sought is *essential* to opposing the motion'; (2) 'The *specific reasons* why such evidence cannot be presented at the present time'; (3) 'An estimate of the *time* necessary to obtain such evidence'; and (4) 'The specific steps or procedures the opposing party intends to utilize to obtain such evidence.' (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2011) ¶ 10:207.15, p. 10-83 (rev. # 1, 2011).)" (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 532.)

Massey's counsel's declaration did not meet those standards. The declaration identified Rite Aid employees whom he desired to depose and chronicled his communications with Rite Aid to schedule those depositions. Massey's counsel explained in his declaration that two of the employees "have unique or superior knowledge regarding discoverable information." He generally asserted, "the information sought through their depositions will assist Plaintiff in opposing the Motion for Summary Judgment." Although he cited his proposed deponents' involvement in various communications related to the incident, he did not explain what might have been discovered in their depositions or how any such evidence would have been essential to oppose the motion for summary judgment. The trial court did not err in denying Massey's request for a continuance.

16

DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.