Filed 11/17/20  Atkins v. Rancho Physical Therapy CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| WILLIAM ATKINS et al., | B293634 |
| Plaintiffs, Cross-defendants, and Respondents, | (Los Angeles County Super. Ct. No. BC516798) |
| v. | |
| RANCHO PHYSICAL THERAPY, INC., | |
| Defendant, Cross-complainant, and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Terry A. Green, Judge.  Affirmed.

Ogloza Fortney + Friedman, Darius Ogloza, David Fortney, and Micah Nash for Defendant, Cross-complainant, and Appellant.

Law Offices of Joel W. Baruch and Joel W. Baruch for Plaintiffs, Cross-defendants and Respondents.

_____

Plaintiffs, cross-defendants, and respondents William Atkins (Atkins), Gregory K. Smith (Smith), and John Waite (Waite) were the owners and employees of defendant, cross-complainant, and appellant Rancho Physical Therapy, Inc. (Rancho). After plaintiffs transferred their interest in Rancho to OptimisCorp (Optimis), the relationship among plaintiffs, Rancho, Optimis, and Alan Morelli (Morelli), a principal of Optimis, soured, resulting in extensive litigation in both Delaware and California. In the instant case, plaintiffs sued Rancho for claims arising out of the termination of their employment. The case proceeded to a bench trial, resulting in a judgment for plaintiffs. Rancho appeals, challenging: (1) The trial court's March 22, 2017, order dismissing its cross-complaint after adjudicating plaintiffs' plea in abatement affirmative defense in plaintiffs' favor; and (2) The August 30, 2018, judgment in favor of plaintiffs on their claim for wrongful termination in violation of public policy.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

I. *Factual Background*[1]

A. <u>The parties</u>

Plaintiffs are all licensed physical therapists, and together, in 1991, they founded Rancho.

In 2007, plaintiffs were introduced to Morelli, who had a company that later became Optimis, a Delaware corporation.

---

[1] Because Rancho does not challenge the trial court's factual findings, we set forth the factual background as summarized by the trial court in its statement of decision.

2

Optimis had an undeveloped software program for electronic physical therapy records for offices like Rancho.

B. Business arrangement between Rancho and Optimis

On June 29, 2007, plaintiffs and Optimis entered into a stock purchase agreement, whereby plaintiffs transferred 100 percent of their Rancho stock to Optimis in exchange for approximately 34 percent of Optimis stock. As part of the transaction, plaintiffs also received four-year employment contracts with Rancho.

This new business arrangement between Rancho and Optimis also provided for a five-director board of directors for Rancho. Plaintiffs remained three of the directors; another physical therapist, Joseph Godges (Godges), became the fourth director; and Morelli, an attorney and not a licensed physical therapist, became the fifth board member.

In addition, Waite "became the #2 in the Optimis organization as its COO [chief operating officer]. Unlike Waite, Atkins and Smith did not become employees or officers of Optimis under the new arrangement. All three plaintiffs, however, were on the Optimis nine-person board."

After the initial four-year term on plaintiffs' employment contracts expired, there were three extensions, with the last contract set to expire on June 29, 2014.

C. Attempt to remove Morelli from Optimis for sexual harassment

In September 2012, Waite, in his capacity as COO of Optimis, received a complaint from Optimis physical therapist Tina Geller (Geller) that Morelli was "sexually harassing and/or assaulting her." Following an investigation, "Morelli's sexual harassment of . . . Geller was proven." As a result, on October 20,

3

2012, the Optimis board removed Morelli as the controlling member of the Optimis board and as its chief executive officer. "However, because no agenda was sent to Morelli along with the meeting notice . . . , the Optimis board vote was a nullity under Delaware law. Morelli, therefore, was able to resist the removal attempt."[2]

D. Plaintiffs' concerns about Rancho

By 2013, Rancho was "flourishing" under plaintiffs' direction and "Optimis was floundering under Morelli's direction. Optimis/Morelli were actively seeking financing through bank loans." Plaintiffs were concerned about a potential loan from an internet bank because the bank required the loan on the condition that Optimis pledge the Rancho business in the event of a default. And the loan transaction would have violated pertinent provisions of the Rancho operating plan and the Optimis stockholders agreement.

Also in 2013, plaintiffs sought legal advice about whether the corporate structure of Rancho violated the law. They were advised that Rancho was a corporation that could only be owned and operated by licensed physical therapists. Thus, since June 2007, Rancho had been operating illegally.

E. Optimis removes plaintiffs from Rancho

On June 25, 2013, "Optimis/Morelli decided to remove" plaintiffs and Godges from the Rancho board. "The reason for [plaintiffs'] removal as directors of the physical therapy

---

[2] This issue was at the heart of the first lawsuit filed in Delaware, what has been referred to as the section 225 action. (See, e.g., *Atkins v. Morelli* (Sept. 26, 2017, B271329) [nonpub. opn.], p. 3.)

4

corporation that they founded and developed into a successful entity was because Plaintiffs would not sign the loan documents from the internet bank."

F. Plaintiffs and Rancho file the illegality lawsuit against Optimis

"Upon being advised they were removed as directors (and officers) of Rancho . . . , and were being replaced by lawyers Morelli and [Laurence] O'Shea, who were not licensed physical therapists as required under" Rancho's bylaws "and by the [Moscone-Knox Professional Corporation Act (the Moscone-Knox Act)] (codified at *Corporations Code* §§ 13400-13410), Plaintiffs had no choice but to seek the intervention of the Superior Court." Plaintiffs and Rancho filed an action against Optimis and Morelli in Los Angeles on June 26, 2013 (the illegality lawsuit).

On July 2, 2013, the superior court in the illegality lawsuit found "that the corporate structure of Rancho . . . was illegal since the June 29, 2007 . . . arrangement between it and Optimis—i.e. Rancho . . . was a physical therapy corporation that had to be owned, operated, and managed by licensed physical therapists. The Superior Court, however, also decided that it would not be practical and fair to undo the past transactions of six years between the parties. Going forward in an illegal structure was a different story from the Superior Court's perspective—consequently, the Superior Court set another hearing on July 5, 2013 for Rancho . . . to come up with a plan whereby it would be owned, operated, and managed by licensed physical therapists instead of by Optimis and Morelli."

G. Plaintiffs' employment is terminated

"Once Plaintiffs' illegality lawsuit was filed on June 26, 2013, Morelli hired and installed a licensed physical therapist

5

named Edwin Tinoco [(Tinoco)] as the sole 100% shareholder of Rancho . . . , and then made him the sole director and the CEO of the organization. In exchange, which was wholly without any consideration, Tinoco agreed to give Optimis back a management services agreement in which 55% of the monthly Rancho . . . revenues would be sent to Optimis."

On July 5, 2013, Tinoco terminated each plaintiff's employment. That same date, the superior court in the illegality lawsuit determined that the illegality issue had been resolved; plaintiffs soon thereafter dismissed that action.

II. *Procedural Background*

A. <u>The pleadings</u>

Plaintiffs initiated this action on July 30, 2013.[3] The operative pleading, the first amended complaint (FAC), alleges multiple causes of action against Rancho. As is relevant to the issues raised in this appeal, the fifth cause of action alleges wrongful termination in violation of public policy.

Rancho filed an answer to the FAC, setting forth 33 affirmative defenses. The first affirmative defense alleges: "When Plaintiffs filed their FAC in this action and at all times thereafter, an action has been pending in the Court of . . . Chancery of the State of Delaware between Plaintiffs and Defendants . . . , alleging breaches of fiduciary duty, breach of

---

[3] Shortly thereafter, on August 5, 2013, Optimis and Morelli filed an action in the Delaware Court of Chancery against plaintiffs, Godges, and William Horne, former chief financial officer of Optimis, for assorted claims, including breach of fiduciary duty and conspiracy (the second Delaware action). Following trial, the Court of Chancery "issued a 200-plus page ruling in which he denied all of Optimis/Morelli's claims."

contract, and tortious interference. . . . The parties and the subject matter are the same in the two actions. Accordingly, this action should be abated." The twelfth affirmative defense alleges that the "FAC and each of its causes of action are barred either in whole or in part by the doctrines of collateral estoppel and res judicata."

In response, Rancho filed a cross-complaint against plaintiffs. Plaintiffs answered the cross-complaint, asserting, inter alia, an affirmative defense of plea in abatement.

B. <u>Trial on plea in abatement</u>

Prior to trial, plaintiffs filed a motion to try their plea in abatement affirmative defense first. The trial court granted their request and then found in favor of plaintiffs on that affirmative defense. Rancho's cross-complaint was dismissed.

C. <u>Trial on claims in the FAC</u>

The only claims that went to trial were plaintiffs' fifth cause of action for wrongful termination in violation of public policy and a claim that combined the sixth and seventh causes of action for failure to pay plaintiffs their accrued vacation pay upon their termination from Rancho employment.

D. <u>Statement of decision and judgment</u>

After consideration of the evidence, the trial court issued its statement of decision. First, the trial court referenced its prior order dismissing Rancho's cross-complaint: "Optimis/Morelli filed an action for damages against" plaintiffs in Delaware. "The Optimis Board authorized the filing of this Delaware lawsuit for damages on July 9, 2013, only four days after Plaintiffs were terminated. [Citation.] The primary claims in that lawsuit against Plaintiffs were that (1) they conspired with other Optimis board members and amongst themselves to

7

remove Morelli as the controlling director based on allegedly false sexual harassment allegations of . . . Geller against Morelli; (2) they breached their fiduciary duty to Optimis by attempting to take control of Rancho . . . for themselves; and, (3) they breached their fiduciary duty to Optimis by refusing to sign off on the [internet bank loan].  In that lawsuit, Optimis/Morelli also claimed monetary damages for Plaintiffs' activities in connection with their operation of Rancho . . . business after [June 29, 2007]), all of which were contained in the Cross-Complaint filed by . . . Rancho . . . that was ultimately dismissed by this Court in the [Code of Civil Procedure section] 597 proceeding on January 6, 2017."

The trial court then pointed out that the Delaware Court of Chancery had issued a "200 plus page statement of decision" denying all of Morelli's claims.

Thereafter, the trial court turned to the issues in this action.  "In this fifth cause of action, Plaintiffs alleged that the Moscone-Knox . . . Act, codified at *Corporations Code* §§ 13400-13410, and specifically *Corporations Code* §§ 13406(a) and 13407, created a public policy that licensed physical therapists had to operate, manage, and control a professional physical therapy corporation such as [Rancho].  Further, Plaintiffs alleged that they were wrongfully discharged from their employment at Rancho . . . on July 5, 2013 after they filed [the illegality lawsuit] against Optimis/Morelli on June 26, 2013."

The trial court found that the "substantial motivating factor" for Rancho's termination of plaintiffs' employment was plaintiffs' filing of the illegality lawsuit.  Moreover, the Moscone-Knox Act (Corp. Code, § 13400 et seq.) "created a fundamental and substantial public policy that licensed physical therapists

8

had to operate, manage, and control a professional physical therapy corporation" such as Rancho. And "this statutory scheme and these specific code sections inured to the benefit of the public rather than serving the interest of individuals." Furthermore, plaintiffs' filing of the illegality lawsuit "qualified as an exercise of a right or privilege to report an alleged violation of statutes of public importance," the allegations in the illegality lawsuit were "meritorious and well taken" and "did not breach any fiduciary duty or duty of loyalty" to Optimis. Although the Delaware Court of Chancery "found that [plaintiffs'] failure to report to the Optimis board and to . . . Morelli the illegality of the corporation structure at [Rancho] was a violation of their duty of loyalty, it . . . further found that this violation was not a motivating factor in their discharge from the employment at" Rancho. Finally, the trial court found that any attempt to approach and/or notify Morelli of the unlawful corporate structure of Rancho prior to the filing of the illegality lawsuit would have been futile.

Based upon the foregoing, the trial court found in favor of plaintiffs and against Rancho on the fifth cause of action for wrongful termination in violation of public policy.[4]

Judgment was entered awarding monetary damages to plaintiffs.[5]

E. Appeal

Rancho's timely appeal from the judgment ensued.[6]

---

[4] The trial court found in favor of Rancho on the failure to pay accrued vacation pay.

[5] The total monetary awards were $438,381.58 for Atkins, $442,212.18 for Smith, and $436,425.26 for Waite.

9

## DISCUSSION

### I. *Plea in abatement*

Rancho contends that the trial court erred in finding that collateral estoppel barred this action because, according to Rancho, it was not in privity with Optimis in the second Delaware action.

A. <u>Procedural background</u>

On February 6, 2015, Rancho filed a cross-complaint against plaintiffs, alleging causes of action for breach of fiduciary duty, conversion, constructive fraud, violation of Penal Code

---

6 In the parties' appellate briefs, the parties assert that Rancho is appealing two judgments: the dismissal of the cross-complaint following the hearing on plaintiffs' plea in abatement (Code Civ. Proc., § 597) and the judgment following the trial on the merits. No matter how characterized by the parties, two judgments were not entered. "California has adopted the 'one judgment rule.' This rule mandates that under California procedure there is ordinarily only one final judgment in an action. A cross-complaint, under this rule, is not considered sufficiently independent to allow a separate final judgment to be entered upon it, unless the judgment or order on the cross-complaint may be considered final as to some of the parties. A judgment is final when it terminates the litigation between the parties on the merits of the case. [Citations.]" (*Lemaire v. All City Employees Assn.* (1973) 35 Cal.App.3d 106, 109; see also *California Dental Assn. v. California Dental Hygienists' Assn.* (1990) 222 Cal.App.3d 49, 59 ["there cannot be such a final judgment with respect to parties as to whom a cross-complaint remains pending, even though the complaint has been fully adjudicated"].)

10

section 502, civil conspiracy, unfair competition, and declaratory relief.

Plaintiffs answered the cross-complaint, asserting, inter alia, the affirmative defense of plea in abatement. In so alleging, plaintiffs asserted that another action was pending between "most of the parties" to the cross-complaint in Delaware. They asked that the cross-complaint be dismissed once a decision was reached in the second Delaware action.

On August 15, 2016, plaintiffs filed a motion to try their plea in abatement affirmative defense first at trial of action. Thereafter, on October 4, 2016, plaintiffs filed a motion in limine to try their plea in abatement affirmative defense first, pursuant to Code of Civil Procedure section 597. They asserted that Rancho was barred from pursuing its claims in the cross-complaint because "the Delaware Court of Chancery already has resolved all of the cross claims [that Rancho] purports to bring in this action."

Rancho responded to plaintiffs' motion by filing a submission for entry of judgment for Rancho on the collateral estoppel/res judicata special defense. It argued that it was not a party in the second Delaware action, "nor was Rancho in privity with a party to the [second] Delaware action." In addition, it asserted that "[n]o Rancho agent with authority to bring claims on Rancho's behalf was a party to the" second Delaware action.

On January 6, 2017, the trial court heard argument on plaintiffs' affirmative defense of plea in abatement based upon the doctrines of res judicata and collateral estoppel. At the onset of the hearing, the trial court noted that the primary issue was privity. And it found that there was no "material difference between Optimis and Rancho. It looks like one does physical

11

therapy and one does everything else. . . . [O]ne was a wholly-owned subsidiary, they're interlocking board of directors." The trial court continued: "I understand that you have the management agreement, the management agreement just basically gives Rancho compliance with California law that it has to be run by physical therapists, but everything else is run by Optimis. [¶] I just don't see what the difference would be. I think the interest of one would be interest of both. So I would find privity between the two, and that sort of resolves our issue, doesn't it? Because it was resolved on the merits in Delaware. [¶] And, in fact, looking at the papers, it looked like that Rancho sort of agrees because with the discovery responses that were given, it makes your position, Rancho, now difficult here to now argue something else. So I would say that this matter has been concluded in Delaware."

Plaintiffs' counsel then added an exhibit that "further solidifie[d] the conclusion the court ha[d] reached." Specifically, plaintiffs presented a copy of an Optimis shareholder/stockholder update dated November 17, 2016. That document provides, in relevant part: "'Through the excellent advocacy of our outside counsel, Darius Ogloza [counsel for Rancho in this action], and general counsel, Paul Price, the company successfully removed the bulk of the claims by the former directors and, in turn, filed and has pursued counterclaims against the former directors for, among other things, breach of their fiduciary duty to the company's Rancho operating unit.'" According to plaintiffs, this document was "a pretty clear admission from Optimis that Optimis and Rancho are the same thing and they are pursuing the same claims." The trial court agreed.

12

Rancho's counsel then urged the trial court to find no privity. But in response to various contentions, the trial court noted: "Well, I can see why you have separate companies, for any number of reasons . . . . [¶] But the operating agreement that was at issue here pretty clearly said that you're only separate companies to the extent Rancho does physical therapy and Optimis does everything else. I mean, it looks like, to me looking at it, was total control except for who's going to bend this arm back and tweak the hamstrings, which, of course, Optimis can do. Otherwise, it's—it's the same company."

Later, after extensive argument, the trial court stated to Rancho's counsel: "[T]he party in privity who owns the party you now represent and controls by matter of contract, controls all the business of the party you represent made a tactical decision not to pursue factual predicates, not to prove the factual predicates that the court clearly had jurisdiction of; and therefore, I think you're bound by it."

Ultimately, the trial court granted plaintiffs' motion and dismissed Rancho's cross-complaint.[7]

B. <u>Standard of review</u>

This is an appeal from a judgment following a court trial on plaintiffs' affirmative defense. Because the facts are undisputed, and the issues presented involve questions of law, we review the

---

[7] A judgment of dismissal was purportedly entered on March 22, 2017. And Rancho timely filed a notice of appeal from that judgment. Rancho later abandoned that appeal. We deem the dismissal to be part of the final judgment entered August 30, 2018. The trial court's statement of decision incorporates the dismissal of the cross-complaint, which led to the final judgment.

13

judgment de novo.  (*Gavin W. v. YMCA of Metropolitan Los Angeles* (2003) 106 Cal.App.4th 662, 669–670; *Noble v. Draper* (2008) 160 Cal.App.4th 1, 10 ["In reviewing the trial court's ruling to dismiss the . . . counts on the grounds of res judicata and collateral estoppel, we apply de novo review since the matter presents a question of law.  [Citation.]"].)

    C.  <u>Relevant law</u>

Code of Civil Procedure section 597 provides, in relevant part:  "When the answer . . . sets up any . . . defense not involving the merits of the plaintiff's cause of action but constituting a bar or ground of abatement to the prosecution thereof, the court may . . . upon the motion of any party[] proceed to the trial of the special defense . . . before the trial of any other issue in the case, and if the decision of the court . . . upon any special defense so tried . . . is in favor of the defendant pleading the same, judgment for the defendant shall thereupon be entered."  This statute "applies to the trial of special defenses pleaded in an answer to a cross-complaint."  (Code Civ. Proc., § 597.)

"To 'abate' a right of action is to *suspend* its prosecution due to some impediment that, without defeating the underlying cause of action, prevents the *present* maintenance of suit."  (*County of Santa Clara v. Escobar* (2016) 244 Cal.App.4th 555, 564.) Plaintiffs sought abatement here on the grounds of collateral estoppel.

"Collateral estoppel is one aspect of the broader doctrine of res judicata.  [Citation.]  'Where res judicata operates to prevent relitigation of a cause of action once adjudicated, collateral estoppel operates (in the second of two actions which do not involve identical causes of action) to obviate the need to relitigate issues already adjudicated in the first action.  [Citation.]  The

14

purposes of the doctrine are said to be "to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, [and] to protect against vexatious litigation." [Citation.]'" (*Syufy Enterprises v. City of Oakland* (2002) 104 Cal.App.4th 869, 878.)

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. [Citation.] Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.] The party asserting collateral estoppel bears the burden of establishing these requirements. [Citation.]" (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. omitted.)

"'[T]he word "privy" has acquired an expanded meaning. The courts, in the interest of justice and to prevent expensive litigation, are striving to give effect to judgments by extending "privies" beyond the classical description. [Citation.] The emphasis is not on a concept of identity of parties, but on the practical situation.' [Citation.] "Privity is essentially a shorthand statement that collateral estoppel is to be applied in a given case; there is no universally applicable definition of privity." [Citation.] The concept refers "to a relationship between the party to be estopped and the unsuccessful party in

15

the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel.'" [Citation.]" (*California Physicians' Service v. Aoki Diabetes Research Institute* (2008) 163 Cal.App.4th 1506, 1521 (*California Physicians*)).)

"Notions of privity have been expanded to the limits of due process. [Citation.] 'In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication.' [Citation.]" (*California Physicians*, *supra*, 163 Cal.App.4th at p. 1522; see also *Kerner v. Superior Court* (2012) 206 Cal.App.4th 84, 125.)

"Moreover, '[a] person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction . . . .' [Citations.]" (*Kerner v. Superior Court*, *supra*, 206 Cal.App.4th at p. 126.)

D. <u>Analysis</u>

Applying the foregoing legal principles, we conclude that the trial court did not err in finding that Rancho's claims in the cross-complaint are barred by the doctrine of collateral estoppel.

Rancho makes only one argument on appeal: It contends that it was not in privity with Optimis in the second Delaware action and therefore is not precluded from pursuing the claims in the cross-complaint. We are not convinced. As the trial court

16

expressly found, there is no "material difference between Optimis and Rancho." While Rancho does the physical therapy, Optimis "does everything else." And Rancho is a wholly-owned subsidiary of Optimis, with an interlocking board of directors. It follows that the interest of one would be the interest of both.[8]

Rancho further argues that it would be unfair to find privity here. We disagree.

"Even where minimum requirements for collateral estoppel are established, the doctrine will not be applied 'if injustice would result or if the public interest requires that relitigation not be foreclosed. [Citations.]' [Citation.] Thus the court must also consider whether the application of collateral estoppel in a particular case will advance the public policies which underlie the doctrine. [Citation.] 'The purposes of the doctrine are to promote judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system and to protect against vexatious litigation.' [Citation.]" (*Roos v. Red* (2005) 130 Cal.App.4th 870, 886–887.)

Rancho has not shown how it was unfair to apply the doctrine here. Because Rancho's interests were adequately represented by Optimis in the second Delaware action, no injustice results. And the public interest does not require that Rancho be permitted to relitigate issues that were already litigated and fully determined in the second Delaware action. Rather, applying the doctrine of collateral estoppel advances the

---

[8] Bolstering our conclusion is the November 17, 2016, Optimis shareholders update that plaintiffs introduced at the hearing on their motion.

17

purposes of that doctrine by minimizing repetitive litigation and preventing a potentially inconsistent judgment.

In a similar vein, Rancho asserts that no "party to the [second] Delaware Action had the *authority* to bring claims owned by Rancho on Rancho's behalf in that action." It also contends that Optimis lacked standing to pursue any of Rancho's claims in the second Delaware action. The problem for Rancho is that it fails to offer any legal authority in support of its apparent theory that Optimis had to have had authority and/or standing to bring Rancho's claims in the second Delaware action in order for the doctrine of collateral estoppel to apply here. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Nor could it. As set forth above, in order to establish that the doctrine of collateral estoppel applies, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. (*Lucido v. Superior Court*, *supra*, 51 Cal.3d at p. 341.) There is no requirement that the party in the prior action (in this case, Optimis) have authority to bring claims on behalf of the party against whom preclusion is sought (in this case, Rancho), just as there is no requirement that the party against whom preclusion is sought (in this case, Rancho) have standing in the prior proceeding in order for the doctrine of collateral estoppel to apply.

II. *Judgment in favor of plaintiffs on the fifth cause of action for wrongful termination*

Rancho argues that the trial court erred in granting judgment to plaintiffs on their claim for wrongful termination in violation of public policy.

18

A. Standard of review

This appeal presents mixed questions of fact and law. Generally speaking, mixed questions of law and fact are reviewed de novo. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385.)

B. Relevant law

The elements of a claim for wrongful termination in violation of public policy are: (1) an employer-employee relationship; (2) the employee was subjected to an adverse employment action; (3) the adverse employment action violated public policy; and (4) the adverse employment action caused the employee damages. (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 641.) For an adverse employment action to have violated public policy, the employee must establish that his "dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1256, fns. omitted.)

C. Analysis

Applying these legal principles, we conclude that the trial court properly awarded judgment for plaintiffs on their wrongful termination cause of action.

*First*, an employer-employee relationship existed between Rancho and plaintiffs; in fact, plaintiffs had employment contracts with Rancho. *Second*, plaintiffs were subjected to adverse employment action—their employment was terminated. *Third*, the termination of plaintiffs' employment violated public policy. After all, as the trial court found, their employment was terminated in response to their filing of the illegality lawsuit, and that lawsuit implicated a public policy embodied in a statutory

19

scheme, namely the Moscone-Knox Act.  And *fourth*, plaintiffs were damaged.

Urging us to disagree, Rancho challenges the third element and argues that the filing of a lawsuit is insufficient to support a claim for wrongful termination in violation of public policy.  In support, Rancho relies heavily upon *Jersey v. John Muir Medical Center* (2002) 97 Cal.App.4th 814 (*Jersey*).  *Jersey* does not support Rancho's contention on appeal.

In *Jersey*, the Court of Appeal considered whether an employer "that terminates an at-will employee for bringing [a lawsuit] violates a fundamental public policy that supports a so-called *Tameny* claim." (*Jersey*, *supra*, 97 Cal.App.4th at p. 818, citing *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170.)  The Court of Appeal concluded that it did not (*Jersey*, *supra*, at p. 818), reasoning:  "While discharging an employee for exercising a right or privilege may in some instances contravene a fundamental public policy, supporting a wrongful termination claim, neither [*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083 (*Gantt*), overruled on other grounds in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6] nor any other case has held that every such discharge necessarily satisfies the criteria for a wrongful termination action.  Discharging an employee for exercising a right is tortious only if the criteria enumerated in *Gantt* and subsequent decisions are met.  [Citation.]  The public policy that is violated must be one that is delineated by constitutional, statutory, or regulatory provisions.  [Citations.]  It must be a policy that inures to the benefit of the pubic, and it must be well established, '"fundamental" and "substantial."' [Citations.]" (*Jersey*, *supra*, at p. 821.)

20

Ultimately, the *Jersey* court held that "[n]one of the broad constitutional and statutory provisions plaintiff relies upon reflect a legislative determination that it is against public policy for an employer to insist that its employees not sue its customers, clients or patients. . . . The question is not whether the [employer's] decision to terminate plaintiff was justified, but whether the termination violated a public policy that has been clearly articulated by a legislative or regulatory body." (*Jersey*, *supra*, 97 Cal.App.3d at p. 825.)

Unlike the plaintiff in *Jersey*, plaintiffs did more than just file a run of the mill lawsuit. Their illegality lawsuit was rooted in public policy as codified in the Moscone-Knox Act. As one court has explained: "Prior to the enactment of the Moscone-Knox Act in 1968, practitioners of certain professions were not permitted to incorporate, the prevailing case law being that a corporation, as an artificial entity, could not 'practice' that profession." (*Marik v. Superior Court* (1987) 191 Cal.App.3d 1136, 1139.) Moreover, there were concerns about laymen exercising control over decisions made by certain practitioners; after all "laymen, who are not bound by the ethical standards governing the profession, might seek to enhance the corporation's 'commercial advantage' rather than conform to professional strictures. [Citations.] [¶] These public policy concerns were incorporated into the Moscone-Knox Act, which prohibits persons other than those answerable to the licensing authority of the particular profession from becoming shareholders or directors of a corporation engaged in rendering the services of that profession." (*Marik v. Superior Court*, *supra*, at p. 1139.)

In other words, the Moscone-Knox Act sets forth a fundamental public policy that inures to the public benefit and is

21

delineated by statute, and plaintiffs' illegality lawsuit invoked that public policy. It follows that plaintiffs' termination for filing the illegality lawsuit constitutes a wrongful termination in violation of public policy.

Finally, Rancho asserts that the *filing* of the illegality lawsuit did not constitute the *reporting* of a violation of the Moscone-Knox Act, giving rise to a *Tameny* claim. There are at least two problems with this argument. First, it appears that Rancho conflates two categories of violations of public policy. "In *Gantt*, the Supreme Court . . . observed, 'as courts and commentators alike have noted, the cases in which violations of public policy are found generally fall into four categories: (1) refusing to violate a statute [citations]; (2) performing a statutory obligation [citation]; (3) exercising a statutory right or privilege [citation]; and (4) reporting an alleged violation of a statute of public importance [citations].' [Citation.]" (*Jersey*, *supra*, 97 Cal.App.4th at pp. 820–821.) Here, as set forth above, plaintiffs were terminated for exercising their right to bring a lawsuit that invoked a fundamental and important public policy. That is *Gantt*'s third category. And while terminating an employee for bringing a lawsuit may not always constitute a wrongful termination in violation of public policy, for the reasons set forth above, it was here. (See *Jersey*, *supra*, at p. 824 [while "an employer may with impunity discharge an employee for filing an action over matters that do not enjoy . . . statutory protection," a discharge because of an employee's exercise of statutory rights may give rise to a wrongful termination claim].)

Second, while Rancho may be "unaware of any case involving a *Tameny* claim in which an employee's report of a violation of statute . . . involved a report made *to a court by the*

22

*filing of a lawsuit*," that does not mean that the filing of a lawsuit cannot give rise to such a claim. Absent legal authority to support Rancho's contention that the filing of a lawsuit can never mean "reporting" a statutory violation, particularly when reporting the violation to Morelli would have been futile, there is no basis upon which to reverse. (*Benach v. County of Los Angeles, supra*, 149 Cal.App.4th at p. 852.)

## DISPOSITION

The judgment is affirmed. Plaintiffs are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT